## HENRY ADR. VS. FINE.

No demand is necessary before the commencement of a suit in Replevin, where the defendant has treated the property as his own and exercised acts of ownership over it. (17 *Ark.* 172-4.)

Where a contract of sale of property is made by a person who lacks the capacity to make a valid contract, it is not necessary, to avoid the sale, that it be rescinded by the payment or tender of payment of the consideration paid by the purchaser. All the contracts of a lunatic are not held to be void, or even voidable—contracts for necessaries, etc., having been held to be binding.

In an action by the administrator of an insane person, to recover property sold by him, the vendee having introduced testimony as to the consideration paid, it was competent for the plaintiff, in connection with proof of the vendor's incapacity, and the defendant's knowledge of it, to prove that the value of the property was greater than the price given, and that the full consideration had not been paid.

*Error to Washington Circuit Court.*

Hon. JOHN M. WILSON, Circuit Judge.

JORDAN for the plaintiff.

Mr. Justice FAIRCHILD delivered the opinion of the court.

On the 15th of January, 1856, John Brandon executed a bill of sale of a negro boy, Joseph, for the expressed consideration of seven hundred dollars, and in March, 1858, the possession was in Fine, according to the title, when Henry, as the administrator of Brandon, brought this suit, in which, by writ of replevin he acquired possession of the boy. It was proved that Fine claimed, and had treated the boy as his own property, and that Henry had demanded the boy of Fine in the month in which the suit was brought, but the demand was not proven to have been made before the commencement of the suit. This

27

was doubtless the reason of Henry's fourth instruction, that no demand was necessary, if Fine exercised acts of ownership over the boy.   The court refused this instruction, and gave a contrary one at the request of Fine, which was his fifth instruction.   These rulings of the court are in direct opposition to the law as settled by several decisions of this court, and were erroneous.   *McNeill vs. Arnold*, 17 *Ark*. 172–174.

The supposed insanity of Brandon, when he made the bill of sale, is the basis of the action, and to its establishment and disproof the efforts of the parties were mainly directed upon the trial.   The testimony upon this point seems from the bill of exceptions, to have been perspicuous, both from the clearness with which the acts of Brandon, evincing his state of mind, are detailed, and from the opportunities and ability of the witnesses for giving intelligent opinions of his capacity.   And although evidence was adduced on both sides, that showing the incapacity of Brandon to make a contract understandingly is so preponderant that the verdict, which the defendant obtained, can be attributed only to the instructions which the court gave on his motion.   All of the instructions asked by the plaintiff, except the fourth, above mentioned, were given by the court, and with the exception of the fifth, would have assisted the jury in coming to a correct conclusion.

The first, second and third instructions of the defendant assume that though Brandon lacked the capacity to make a valid contract, his sale of the negro to Fine is good, unless the contract had been rescinded by the payment, or tender to him of the consideration he paid for the negro.   These instructions were wrong.   But in so saying, it is not necessary for us to decide, and we do not hold, that all the contracts of a lunatic are void or even voidable.   For contracts for necessaries, for the support of himself and his family, for medical attention, for legal services upon the question of lunacy, for goods suitable to his rank and condition in life, though not necessaries, have been held to be binding upon him; but those were contracts that were implied from the necessity or reasonableness of hav-

ing the goods or labor to be paid for; were not express contracts, or contracts under seal. *Bagster vs. Portsmouth*, 7 *Dowl. & Ryland*, 614; 5 *B. & C.* 170., *La Rae vs. Gilkyson*, 4 *Penn. State Rep.* 376; *Hallett vs. Oakes*, 1 *Cush.* 299; *Chitty on Contracts*, (9 *Am. ed.*) 136.

And there are authorities that deny, in general terms, that all the contracts of an insane person are void; while others endeavor to class all as voidable, except such as may be implied for the payment of necessaries, and as may be included in the class of cases above cited. *Beals vs. See*, 10 *Penn. State R.* 61; *Fitzgerald vs. Reed*, 9 *S. & M.* 102. But in *Bagster vs. Portsmouth*, a leading case upon this subject, in which the hire of carriages was ordered to be paid for, that had been used by a lunatic, the use of them being suitable to his rank and condition, LITTLEDALE J., expressly said that a deed, bond or other specialty would be without doubt avoided if executed by a party who was *non compos mentis*. · In *Hallett vs. Oakes*, another of the cases above cited, and in which a defendant was held liable on an implied contract for the professional assistance of a lawyer upon the subject of lunacy, SHAW, C. J., said that, " mental capacity is undoubtedly necessary to the validity of an express contract, which derives its force from the mutual agreement of the parties."

In a well considered case, reviewing the principal authorities, it was held that the contracts of an insane person are voidable, although the other contracting party was not aware of the disability. That case resembled this, in being an action to recover a note that had been pledged, but was unlike it in the important fact, that the defendant did not know of, and had no reason to suspect the plaintiff's insanity. *Seaver vs. Phelps*, 11 *Pick*, 304. And in a very late case in the same court, the precise question under consideration here was decided adversely to the defendant's instructions, that land conveyed by an insane person could be recovered without making any restitution of the consideration, before the bringing of the suit. *Gibson vs. Loper*, 6 *Gray*, 279. And the court in that case, as we in this,

declined to enter into the question whether the grantee of the deed that had been avoided, could recover back the price paid for the land. Upon a bill filed in chancery for the rescision of a contract made by an insane person, the benefits of the contract might have to be compensated by putting the party in the situation he had before the contract was made. *Fitzgerald vs. Reed*, 9 *S. & M.*, 103; *Loomis vs. Spencer*, 2 *Paige*, 159.

All the authorities say and imply that whenever any contract, save for necessaries, is enforceable against a lunatic, the other party must be ignorant of the disability. In addition to what will be found in the foregoing citations, see *Chitty on Contracts* 139; 1 *Parsons on Contracts* 312; *Story on Contracts s.* 42. This principle was not, as it could not be, embodied in the defendant's instructions.

The defendant, after proving the execution of the bill of sale by a subscribing witness, also proved by him in what the consideration consisted, namely, two hundred dollars in cash paid to Brandon, and five hundred and fifty dollars which the defendant had advanced for Brandon, in payment of a debt he owed to Pettigru. To rebut this, the plaintiff offered to prove that the defendant never made any such advance for Brandon, that that Brandon never owed Pettigru that, or any sum, and that the negro was worth more than the nominal price made up of both sorts of considerations proved by the witness of the defendant. The court refused to allow this testimony to be given to the jury, and, in doing so, erred. In connection with the proof of Brandon's incapacity, and Fine's knowledge of it, the value of the negro was material to be considered with the price to be paid by Fine, and Brandon's indebtedness to Pettigru was a matter which the plaintiff might well deny, and disprove, if he could.

For the errors of the circuit court, in excluding this evidence, in refusing to give the fourth instruction of the plaintiff, and in giving the first, second, third and fifth instructions of the defendant, the judgment rendered in his favor is reversed on the writ of error prosecuted thereto by the plaintiff, and the case is

remanded that the parties may have the benefit of a legal judgment.