## McDONALD v. SMITH.

Opinion delivered June 27, 1910.

1. HUSBAND AND WIFE—EFFECT OF CONVEYANCES BETWEEN.—While equity will scrutinize a deed from a wife to her husband with great jealousy, such a transaction, if fairly entered into, is binding, and will convey to him the equitable title. (Page 526.)

2. FRAUD—EXPRESSION OF OPINION AS TO LAW.—A statement which is only an expression of opinion as to the law is not fraudulent. (Page 527.)

3. SAME—EQUALITY OF MEANS OF INFORMATION.—Where the means of information are equally open to both parties, it will be deemed that they have relied upon their own knowledge. (Page 527.)

4. SAME—INADEQUACY OF CONSIDERATION.—Where a vendee agreed to pay $300 and the cost of a fence estimated to be worth from $65 to $140 for land reasonably worth from $500 to $600, the inequality between the agreed price and the value was not so gross as to stamp the transaction as fraudulent. (Page 528.)

5. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.—A chancellor's findings of fact will not be set aside on appeal unless clearly against the preponderance of the evidence. (Page 528.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Cockrill & Armistead,* for appellant.

Appellees obtained no title by the alleged conveyance of W. H. Smith. 67 Ark. 15; 88 Ark. 56; 80 Ark. 421; 86 Ark. 448; 19 Tex. 303. The weight of the evidence is against the decree and the validity of the conveyance. 119 Fed. 406; 16 Pa. St. 212; 37 La. Ann. 871; 41 N. J. Eq. 167; 27 Pa. St. 333; 14 Ia. 481; 116 Mo. 155; 98 Wis. 559; 7 Wheat. 283. The burden was upon appellees to show that the transaction was freely entered into by Mrs. Smith. 60 Ark. 301; 119 Ala. 641; 8 Conn. 254; 50 Md. 480; 122 Pa. St. 256. The presumptions are against the validity of the conveyance. 94 U. S. 506; 141 Mo. 466; 22 Ala. 532; 71 S. W. 309; 112 Wis. 461; 46 Wis. 419; 66 Wis. 100; 96 Wis. 559; 3 Tenn. Ch. 382; 50 Cal. 558; 46 S. W. 466; 88 Ala. 462. The conveyance is void because of undue influence and misrepresentation. 85 Ia. 580; 63 Md. 371; 57 N. H. 374; 17 Neb. 381; 49 Mich. 290; 73 Am. Dec. 159; 35 S. W. 186; 29 S. W. 242; 51 Ia. 364; 111 Ala. 456; 26 N. Y. 12; 64 S. W. 329; 85 Ark. 363;

26 Ark. 611; 40 Ark. 31; 14 Ves. 273; 15 Am. Dec. 572; 6 N.
Y. 274; 25 Am. Dec. 292.

*Walter J. Terry,* for appellee.

The evidence does not justify the cancellation of the deed.
38 Ark. 428. Upon satisfactory evidence that an adequate con-
sideration has been paid and that no undue influence has been
used, the presumption of fraud will be removed. 21 Cyc. 1293.

Frauenthal, J. This was an action originally instituted
by Martha Smith to set aside and cancel conveyances executed
by her for a tract of land in Pulaski County, upon the ground
that they were obtained by fraud. During the pendency of
the suit, and after she had given her testimony in the case,
Martha Smith died, and this suit was revived in the name of
her representative. She had been twice married, and by her
first husband she had a son named Corrie McDonald, who at
the time of the institution of this suit was 40 years old, and
at her death was her sole heir. In 1885 she married her second
husband, W. H. Smith, and at that time was the owner of the
land in controversy; and also of about 160 acres additional,
which was her homestead at the time of her death. The tract
of land in controversy contains about 28 acres, and in 1888
the house and fences thereon were partially destroyed by a
cyclone. The land had been badly cultivated, and the im-
provements had been greatly neglected. She desired that the
house and improvements upon this tract should be repaired,
so that it might bring some returns. At the suggestion of her
husband she agreed to convey the tract to him if he would
make the repairs, and also in order that he might gain the
benefit of his labor and own the land in event of her death.
On August 16, 1888, she executed to him a deed for the land,
which was recorded on the same day. Smith made the im-
provements on the land and continued to cultivate and exercise
acts of ownership over it from that date until 1901, when he
departed from the settlement, leaving his wife there. Several
years after obtaining the land he conveyed two acres of it to
Corrie McDonald, and Mrs. Smith testified that during all
those years she considered and recognized the land as belonging
to her husband, and was perfectly satisfied that she had con-
veyed it to him. She stated that he made her a good husband,

and that she had no reason to complain of him while they lived together. In 1901 the land was rented for fifteen dollars per annum, and it is not claimed that this was not a fair rental value of the land at that time. After this Corrie McDonald built a fence on the land, which he removed about the time of or just after the institution of this suit. About January 1, 1908, W. H. Smith returned, and was endeavoring to sell the land. He told J. M. King he would sell the land for $300. King had lived in the family of Martha Smith from the time he was a child until 1889, when he married. Since that time he had lived in the same community with her, and visited her frequently, but there is no testimony that he transacted any business for her, or that Mrs. Smith either relied upon him to attend to any matters for her or confided to him any of her affairs. King went to the home of Mrs. Smith, and told her that her husband had returned, and was endeavoring to sell the tract of land. She testified that he told her that Smith had come back with the determination to sell the land to some one, and that he had the right to sell it, and that he (King) would buy it and pay her one-third of the purchase money and also pay her son for the fence he had built on the land. She then asked him: "What are you going to give for it?" And he says: "$300." "And I says: '$300'; that looks like a mighty little to me." She stated that, believing the representation that her husband could sell the land, she agreed to execute the deed for the land on the terms named. She also stated that she was at the time suffering from neuralgia, and was greatly influenced by King's statement that Smith could sell the land. King testified that he told her that Smith was trying to sell the land, and was willing to take $300 for it; that he would buy it and pay her one-third of the purchase money, and also pay her son for the fence built on the land by him; and that she told him to go ahead and buy it. On the following day King purchased the land, paying to Smith $200. He had the deed made in the name of his wife, for the reason, as he claimed, that she advanced the money. Mrs. Smith joined in the execution of the deed, and also relinquished all right of dower in the land. Her acknowledgment to the deed was taken before a notary public, who testified that it was fully read over to her. Mrs. King executed her note to Mrs. Smith for $100, bearing inter-

est, which was accepted by Mrs. Smith. At the time of the filing of her answer Mrs. King tendered the $100 and interest to Mrs. Smith, and brought the money into court. At the time of the execution of the deed Mrs. Smith was 60 years old, and, while there is some testimony showing that she was weak in body and not strong in mind, yet we think the preponderance of the testimony shows that she was able to read and write and mentally able to attend to her affairs in the same manner that a woman of her years and experience would ordinarily be able to do. The testimony tends to prove that the land at the time of the execution of the deed to Mrs. King was worth about $500.

The chancellor made a finding of fact in favor of the appellees, and denied the prayer of the complaint, which sought the cancellation of the deeds on the ground of fraud. He ordered that the $100 and interest, which had been brought into court by the appellees in payment of the note for the land, be turned over to the representative of Mrs. Smith.

It is urged by counsel for appellant that King obtained the execution of the deed in 1908 by misrepresentation and undue influence and for a grossly inadequate consideration, and on this account that it was secured by fraud and should be cancelled. While the deed to Mrs. King is not necessarily dependent upon the validity of the deed executed by Mrs. Smith to her husband, nevertheless the legal effect of that deed and the manner in which its validity was considered by the parties will materially assist in determining whether or not the deed to Mrs. King was obtained by false representations or by wrongful influence. The chief ground for the assertion that misrepresentation was made by King, or that improper influence was exerted on Mrs. Smith, to obtain the deed is that she was told that her husband could sell the land, when as a matter of fact (or rather of law) her deed to him was void. But, as a matter of law, the deed executed by her to her husband was not necessarily void. Although courts of law will not enforce contracts made between husband and wife, equity will in many instances recognize and enforce them when they are fair and reasonable. This is especially true of conveyances executed by the one to the other. Equity will scrutinize with great jealousy a conveyance from the wife to the husband, but,

as is said in the case of *Hannaford* v. *Dowdle*, 75 Ark. 127: "After all, the demand for such scrutiny is to ascertain, and not to defeat when ascertained, the real intention of the parties, where the transaction is free from fraud. * * * Transactions between husband and wife, when fairly entered into, are as binding upon the courts as between other parties." The direct conveyance by the wife to the husband or by the husband to the wife will be sustained in equity, in the absence of fraud. The technical reason of the common law, arising from the unity of the two, for not enforcing such conveyances does not prevail in equity. Such a deed by a wife to the husband will convey to him the equitable title. *Pillow* v. *Sentelle*, 49 Ark. 430; *Ogden* v. *Ogden*, 60 Ark. 70; *Bowers* v. *Hutchinson*, 67 Ark. 16; *Carter* v. *McNeal*, 86 Ark. 150; *Mathy* v. *Mathy*, 88 Ark. 56. So that by the deed from his wife Smith, in the absence of fraud, obtained an equitable interest in the land, an interest which could be disposed of because it would be recognized and enforced in equity. There is no testimony adduced in the case tending to prove that King knew that the deed had been obtained by undue influence or by fraud. On the other hand, the testimony tends to prove that for twenty years her conveyance to her husband had been recognized and approved by Mrs. Smith; and for years with her knowledge and consent he held himself out to the world as the owner of the land. When therefore King told Mrs. Smith that her husband was endeavoring to sell the land, and that he could do so, he made no statement which he knew to be untrue or which was necessarily false. Under the circumstances of this case, it is doubtful if the statement was untrue, although it was only an expression of opinion of law, and not strictly a statement of fact. It was therefore not a fraudulent misrepresentation. 2 Pomeroy, Eq. Jur., § 882.

Mrs. Smith had information relative to the entire matter equal to that of King; in fact, she had better information. All persons are bound by their contracts if not laboring under some mental disability; and if the means of information are equally open to both parties, it will be deemed that the parties have relied upon their own knowledge. Under such circumstances it can not be said that the contract has been induced by such misrepresentation that a court of equity will refuse to enforce

the contract or cancel it if executed. *Yeates* v. *Pryor*, 11 Ark. 58; *Righter* v. *Roller*, 31 Ark. 170; *Matlock* v. *Reppy*, 47 Ark. 148; *Arkadelphia Lumber Co.* v. *Thornton*, 83 Ark. 403.

Nor can it be said, from the testimony, that the consideration paid for the land by King was so inadequate as to furnish convincing evidence of fraud. The rule is well settled that before inadequacy of price will be considered a sufficient ground for cancelling a conveyance it must be "so gross that it shocks the conscience." 2 Pomeroy, Eq. Jur., § 927; 6 Cyc. 286; *Storthz* v. *Arnold*, 74 Ark. 68.

The land was reasonably worth from $500 to $600. For this land King had agreed to pay $300 and the cost of a fence which was estimated to be worth from $65 to $140. We do not think that the inequality between the price agreed to be paid and the value of the land as testified to upon the trial of the case was so gross as to stamp this transaction as fraudulent.

Nor were the relations existing between Mrs. Smith and King of such a confidential nature as to taint the transaction with fraud. King had at one time lived in the family of Mrs. Smith, but for twenty years prior to the execution of this deed he had been as a stranger, although a neighbor to the family. There is no testimony indicating that King transacted any business for Mrs. Smith, or that she reposed any special confidence or trust in him. He occupied no relation of confidence or trust with reference to her, and it can not be said from the evidence that he exerted any special influence over her by reason of the trust she placed in him.

Mrs. Smith appeared before the chancellor and gave oral testimony in the case. The chancellor had the better opportunity to observe her intelligence and her capacities. While a chancery case is tried upon appeal *de novo,* and this court passes its own judgment upon the weight of the evidence, nevertheless the findings of the chancellor are persuasive, and more especially is this so when he has had the opportunity to see and hear the witness whose intelligence and mental abilities are also in question.

The chancellor found that the transaction between Mrs. Smith and King which culminated in the execution of the deed by her was not tainted with actual or constructive fraud. We have carefully examined the evidence, and we can not say

that the finding of the chancellor is clearly against the preponderance of the evidence.

Under such circumstances the chancellor's finding will not be disturbed by this court.

The decree is affirmed.