REAVES *v.* DAVIDSON.

## Opinion delivered May 7, 1917.

1. DEEDS—CANCELLATION—INSANITY.—In· order to avoid a deed on the ground of insanity in the grantor, it must be shown that the grantor was incapable of exercising a reasonable judgment in regard to the matter involved in the conveyance. In order to invalidate the deed, the insanity must be such as to disqualify the grantor from intelligently comprehending and acting upon the business affairs out of which the conveyance grew, and to prevent him from under-standing the nature and consequences of his act.

2. DEEDS—AVOIDANCE—INSANITY—RESTORATION OF CONSIDERATION. A deed made by an insane person may be set aside without a restoration of the consideration paid by the grantee.

3. LIMITATIONS—BURDEN OF PROOF—DISABILITY OF COVERTURE.— The burden of proof is upon one who pleads the statute of limitations, but the burden is upon one who seeks to avoid a plea of the statute by a plea of the disability of coverture.

4. DEEDS—INSANITY OF GRANTOR—SUIT TO AVOID—DISABILITY OF HEIRS—LIMITATIONS.—In an action to avoid a deed on the ground of the insanity of the grantor, the plaintiffs father, *held*, under the evidence that certain of the plaintiffs were barred from maintaining the action by limitations.

5. LACHES—WHAT CONSTITUTES.—Laches is not merely delay, but delay working to another's disadvantage.

6. DEEDS—ACTION TO SET ASIDE—INSANE GRANTOR.—The action of the heirs of an insane grantor, to set aside a deed executed by him, *held* not barred by laches.

Appeal from Izard Chancery Court; *George T. Humphries,* Chancellor; reversed.

*Hanley & Godwin, Rhoton & Helm* and *Gardner K. Oliphint,* for appellants.

1. There was no tender or return made of the consideration and appellees can not successfully maintain this suit without having done so. 25 Ark. 199, 204; 17 *Id.* 606; 15 *Id.* 286-293; 20 *Id.* 424; 31 *Id.* 364, 376; 39 *Id.* 293; 52 *Id.* 293; *Ib.* 150; 96 *Id.* 265; 5 Ala. 604; 99 *Id.* 281; 85 Cal. 522; 73 Tex. 619; 34 Kan. 8; 7 Pac. 584; 57 N. E. 770; 83 *Id.* 747; 58 N. W. 852; 56 Am. Dec. 561; 25 S. W. 359.

2. Appellees were barred by laches and equitable estoppel. Kirby's Digest, § 5075; 122 Ark. 530; 99 *Id.*

480; 81 *Id.* 352; 121 *Id.* 613; 15 *Id.* 286; 103 *Id.* 259; 118 S. W. 118; 18 Ch. Div. 560-577; Eaton on Equity, Ch. 3; Kirby's Digest, § 734; 51 N. H. 287; 69 Md. 572; 100 U. S. 578; 59 Pa. 214; 6 Vt. 174; 25 Pa. 468; 72 Ill. 500; 69 Mo. 642; 26 N. J. Eq. 128; 120 Ark. 249, etc.

3. The allegation as to inadequacy of consideration is not sustained by the evidence. The consideration was adequate and more than the land was worth. 86 Ark. 460-4; 48 N. H. 133; 37 N. C. 456; 14 R. C. L. 583.

4. Where a contract with an insane has been entered into in good faith and without fraud or imposition, for a fair consideration, without notice of the infirmity, and before an adjudication of insanity, it will not be set aside unless the parties can be restored to their original position. 81 Ind. 433; 42 Am. Rep. 142; 34 Kans. 87, 7 Pac. 584; 37 N. J. L. 108, 18 Am. Rep. 716; 85 Vt. 488, 82 Atl. 837, Ann. Cas. 1914 D 865 and note; 42 L. R. A. (N. S.) 342; 6 Eng. Rul. Cas. 71 and note. See also 88 Md. 368; 41 Atl. 908; 42 L. R. A. 745.

5. Joe P. Davidson was not insane; he had mental capacity to comprehend the nature of his act at the time. 19 Ark. 533, 550; 49 *Id.* 367; 19 *Id.* 547; 107 *Id.* 468; 114 *Id.* 128; 121 *Id.* 498; 100 *Id.* 565; 96 *Id.* 265.

6. Incompetent testimony was admitted. 124 Ark. 74, 84. It was too remote. 108 *Id.* 530. The probate court found him sane. 6 Enc. Dig. Ark. Rep. 293; Buswell on Insanity, Ch. 8, p. 216; 51 N. Y. 378; 6 Gray 279; Ridgway 204; 19 Ark. 533. The burden was on appellees to show insanity. 31 Ark. 306; 97 Ala. 731. See 19 Ark. 533 and 119 *Id.* 466.

7. Testimony as to conversations with Joe P. Davidson after the execution of the deed was competent. 123 Ark. 161; 37 *Id.* 200; 122 *Id.* 227. The trade was not unwise or improvident. 27 Ark. 116; 73 *Id.* 170; 119 *Id.* 466.

8. The decree should be modified as to improvements, rents and taxes. Kirby's Digest, § § 2754-7; 122 Ark. 530; 184 S. W. 399.

*Bledsoe & Ashley,* for appellees.

1. No restoration of the consideration was necessary. The cases cited by appellants do not involve cases of insanity. Land conveyed by an insane can be recovered without restitution. 23 Ark. 417; 6 Gray 279; 94 Pa. St. 48.

2. There is no equitable estoppel nor laches. 51 Ark. 295; 69 Mo. 641; 26 N. J. Eq. 129; 5 Pom. Eq. Jur. § § 29-30; 30 Fla. 612; 18 Ch. Div. 577; 55 Ark. 97; 5 Pom. Eq. Jur. § 19.

3. The consideration was grossly inadequate.

4. The evidence proves insanity.

5. There is no error as to rents, improvements and taxes.

6. The findings are not clearly against the weight of the evidence. 73 Ark. 489; 75 *Id.* 52; 97 *Id.* 537; 97 *Id.* 568.

HART, J. This suit was instituted on April 17, 1916, in the chancery court by appellees, Eli Davidson, Ida Davidson, Millie Brewer (nee Davidson), Eva Glory (nee Davidson) and Ella Davidson, against Hardy Reaves, Deane Hodge and Fred Davidson, to cancel a deed executed by Joseph P. Davidson, the father of the appellees, to one hundred and sixty acres of land to Hardy Reaves and likewise to cancel and set aside a deed to the same land from Reaves to Deane Hodge and from Hodge to Fred Davidson, who was in possession of the land at the time of the institution of this suit. The deed is sought to be avoided on the ground of the insanity of Joseph P. Davidson at the time he executed the deed, who it is alleged continued insane up to the time of his death. The defendants denied the insanity of Joseph P. Davidson and plead the statute of limitations. They also interposed the defense of laches and asked that they be allowed improvements in case the deed to them was canceled.

The chancellor found the issues in favor of the plaintiffs and entered a decree canceling the deed and allowing

defendants for improvements and charging them with the rents for the preceding three years.

1. The deed was set aside on the ground of the insanity of Joseph P. Davidson at the time of its execution. In order to avoid a deed on the ground of insanity in the grantor, it must be shown that the grantor was incapable of exercising a reasonable judgment in regard to the matter involved in the conveyance. . In order to invalidate the deed the insanity must be such as to disqualify the grantor from intelligently comprehending and acting upon the business affairs out of which the conveyance grew, and to prevent him from understanding the nature and consequence of his act. *McEvoy* v. *Tucker,* 115 Ark. 430. The deed from Joseph P. Davidson to Hardy Reaves to the one hundred and sixty acres of land in question was executed on October 15, 1901. The consideration was $186.50. The land was situated in Izard County, Arkansas, and Joseph P. Davidson and his family lived on it. His wife signed the deed and relinquished her right of dower and homestead in it. In 1898, Joseph P. Davidson was adjudged insane and was placed in the State Insane Asylum and was kept there until the first part of 1901. In July, 1901, Joseph P. Davidson was again confined in the State Hospital for Nervous Diseases and was kept there for about two weeks. He was discharged on August 5, 1901. He went home and lived on his farm until in October, when he executed the deed as above stated. He then removed to Cincinnati, Ohio, and while there was confined a part of the time as an insane person. His relatives finally brought him back to Arkansas and he was again adjudged insane and carried to the State Hospital for Nervous Diseases on January 17, 1903, and kept there until he died on August 6, 1906.

Several of his relatives and neighbors testified that they had occasion to observe his actions at the time he executed the deed in October, 1901, and said that he was insane at that time. They stated in detail the peculiarities of his actions. Some of his friends who stayed all

night with him on the night before.he executed the deed said that he pushed the sewing machine around the room all night and on the next day walked around and around the house throwing rocks. They said that his eyes had the peculiar glint of an insane person and they detailed other matters which tended to show his insanity.

Dr. Arkebauer testified that he treated Davidson while he was in the State Hospital for Nervous Diseases, and stated that there was no doubt in his mind about his insanity and that he believed that his particular form of insanity was incurable. It is true the brother of Joseph P. Davidson and several friends testified that his mind was clear and that he understood what he was doing in October, 1901, when he executed the deed in question. We do not deem it necessary to set out their testimony. Quite a number of witnesses testified on the subject and we are of the opinion after a careful consideration of all the testimony that a clear preponderance of the evidence shows that Davidson was insane from the year 1897 until he died.

The record shows that he had been discharged from the asylum the second time on August 5, 1901, but the testimony of disinterested witnesses shows that almost immediately after his return home his mind showed indications that he had again become insane or that he had never been restored to a normal mind and so continued until after the deed to Reaves was executed in the fall.

2. It is next contended that the deed should not have been canceled because the consideration has not been restored. This contention has been decided adversely to the contention of counsel. The consideration received by Davidson was spent by him. In such cases it is not necessary that the insane person should restore the consideration; for one of the grounds on which the deed of an insane person is held avoidable is not merely his incapacity to make the deed but also his incapacity prudently to manage and dispose of the proceeds. *Henry v. Fine,* 23 Ark. 417; *George v. St. L., I. M. & S. Ry Co.,*

34 Ark. 613. In the case of *Gibson* v. *Soper,* 6 Gray. (Mass.) 279, which was cited with approval in *Henry* v. *Fine, supra,* the court said: .

"If the law required restitution of the price, as a condition precedent to a recovery of the estate, that would be done indirectly, which the law does not permit to be done directly; and the great purpose of the law, in avoiding such contracts, the protection of those who can not protect themselves, defeated. The insane grantor could not avoid the deed of his estate, because the same folly, which induced the sale, had wasted the proceeds; the result against which it is the policy of the law to guard."

3. It is also claimed that the plaintiffs are barred of relief by the statute of limitations. Joseph P. Davidson did not die until August 6, 1906, and the statute of limitations did not begin to run against the plaintiffs until after his death. Eli Davidson became twenty-three years of age in 1916, and Ida Davidson was twenty years and two months old at the time of her death in September, 1916, she having died without issue. It is evident then that neither Eli Davidson, nor the heirs of Ida Davidson are barred by the statute of limitations. See *Shapard* v. *Mixon,* 122 Ark. 530.

The records show that Ella Davidson was twenty-six years old in 1916. The suit was instituted on April 17, 1916. So it is evident that she was barred either under the exemption in the seven years statute of limitations (Kirby's Digest, § 5056), or, under the general exemption (Kirby's Digest, § 5075), in favor of infants and other persons under disabilities. *Shapard* v. *Mixon, supra.*

Millie Brewer died leaving a minor child surviving her on June 11, 1916. At that time she was thirty-two years old. It is evident that she is barred by the statute of limitations. If she had been a married woman at the time of her father's death she would have been exempted from the statute of limitations by her coverture, but there

is nothing in the record to show that she was a married woman at that time and if she sought to avoid the plea of the statute of limitations by the disabilities of coverture, she should have shown that she was a married woman at the time her right to sue accrued. *Anders* v. *Roark*, 108 Ark. 248. The burden of proof is upon one who pleads the statute of limitations. *Calhoun* v. *Moore*, 79 Ark. 109, and *St. L., I. M. & S. Ry. Co.* v. *Berry*, 86 Ark. 309. But it devolved upon the plaintiffs who sought to avoid the plea of the statute of limitations by the disability of coverture to establish that fact. Hence as to Ella Davidson and Millie Brewer the plea of the statute of limitations is sustained. As to Eva Glory, the record shows that she was a married woman. It does not show when she became married, and does not show what her age was. Therefore, she is not barred by the statute of limitations and as we have already seen Eli Davidson and the heirs of Ida Davidson are not barred by the statute of limitations.

4. It is also contended that the plaintiffs are barred by laches. In *Tatum* v. *Arkansas Lumber Co.*, 103 Ark. 251, the court held that laches is not merely delay, but delay working to another's disadvantage, which may come from the loss of evidence, change of title, intervention of equity and other causes. There is nothing in the evidence in this case which shows that the defendants have been led into changing their condition with respect to the land, so that it would be inequitable to allow the plaintiffs to be preferred upon their legal rights. The plaintiffs, after their disabilities were removed, did not sit by and allow the defendants to make valuable improvements upon the land under the mistaken belief that it was their own. In fact they did nothing and there was no intervening equities arising under which the doctrine of laches could be invoked. None of the improvements claimed to have been put upon the land were put there after the plaintiffs became of age.

5.   As to the value of the improvements and the rents for three years preceding the filing of the complaint, there is some conflict in the testimony. No useful purpose could be served in setting out the testimony on this branch of the case in detail. We deem it only necessary to say that we are of the opinion that the finding of the chancellor is not against the clear preponderance of the evidence. Of course, the plaintiffs who are barred of relief by the statute of limitations are not entitled to rents and those who have recovered are only entitled to their proportionate share of the rents, and should only have a like proportion of the improvements charged against their interest.

It follows that the decree must be reversed and the cause remanded with directions to enter a decree in accordance with the views expressed in this opinion.