BILYEU *v.* WOOD.

Opinion delivered December 21, 1925.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.— Chancery cases are tried *de novo* on appeal, and findings of fact are allowed to stand, unless they are clearly against the preponderance of the evidence.

2. DEEDS—MENTAL INCAPACITY.—To invalidate a deed on the ground of the grantor's mental incapacity, the proof must show that the grantor was incapacitated to understand and comprehend the nature and consequences of his act.

3. DEEDS—MENTAL INCAPACITY.—In a suit to cancel a deed on the ground of the grantor's mental incapacity, a finding that the grantor was not mentally incapable *held* sustained by the evidence.

4. DEEDS—MENTAL INCAPACITY—BURDEN OF PROOF.—In a suit to set aside a deed on the ground of the grantor's mental incapacity, the burden is on plaintiff to prove mental incompetency.

Appeal from Ouachita Chancery Court, First Division; *J. Y. Stevens*, Chancellor; affirmed.

STATEMENT BY THE COURT.

Deloris Bilyeu brought this suit in equity against N. N. Wood and others to cancel a deed on the ground that it was executed while she was a minor, and also that she was mentally incompetent.

Mattie Burris died, leaving surviving her two children, Lola, aged four, and Deloris, an infant. Mrs. Ida Bell, a sister of Mattie Burris, took the children and reared them as a part of her own family in Ouachita County, Ark. John Bell, her husband, had mortgaged a part of his land to M. P. Watts and T. J. Watts, who were merchants at Camden, Ark. After the death of her husband Mrs. Bell entered into negotiations with M. P. Watts and T. J. Watts to sell them 160 acres of land belonging to her husband's estate, and 240 acres belonging to her nieces, Lola and Deloris Burris. Her husband's estate owed T. J. Watts and M. P. Watts $2,000, which was paid, and the balance of the purchase price and the sum of $1,300 was paid to Mrs. Ida Bell. At the time the sale was made, Lola was 21 years old and Deloris was 16. The disabilities of Deloris as a minor were removed for the express purpose of enabling her to convey the land to M. P. Watts and T. J. Watts. Mrs. Ida Bell raised the girls until they were grown. Lola Burris was sent to a business college at Little Rock, and is working in Little Rock at the present time. She is now 25 years of age, and recognizes that she has conveyed all of her interest in said land by the deed in question. Deloris went through the eighth grade at school, and Mrs. Bell offered to send her to a business college, but she refused to go. She afterwards married a man named Bilyeu, and had two children by him, one of whom is now living. On the 18th day of May, 1922, Deloris Bilyeu executed a quitclaim deed to said land to M. P. Watts and T. J. Watts for a nominal consideration. This was done for the purpose of clearing the title of M. P. and T. J. Watts. The order of the probate court by which the disabilities of Deloris Burris as a minor were removed for the purpose of executing a deed to the land in question did not show that the minor was a resident of Ouachita County where the order was made, and for that reason the order declaring the removal of her disabilities was void within the rule laid down in *Hindman* v. *O'Connor,* 54 Ark. 627.

The deposition of Deloris Bilyeu was taken in 1922, and at that time she said she was 19 years of age. According to her testimony, she signed the quitclaim deed to T. J. and M. P. Watts at the instance of her aunt, Mrs. Ida Bell. She did not know that she was signing a deed, and supposed that she was signing a paper to show where she lived in 1918, at the time the order of the probate court removing her disabilities as a minor was made. She did not read the deed over, and signed it because of the love and confidence she had in her aunt who had raised her. On her cross-examination she stated that she was in the seventh and eighth grades at school when she quit, and then was studying spelling, grammar, arithmetic, geography and history. She was recalled as a witness, and examined as to her mental capacity. She could not recollect, or did not know, but few of the prominent men in the current history of the United States. She said she did not know how many states were in the United States, or who was the first president of the United States. She had heard of Woodrow Wilson, but said that she did not know who he was.

G. S. Murphy was also a witness as to her mental condition. According to his testimony, her mental condition was not very good, and she had the mind of a child about seven or eight years old. The witness has known Deloris all of her life, and based his opinion on hearing her talk and observing her manner.

J. A. Bilyeu, her father-in-law, was also a witness as to her mental condition. According to his testimony, her mind had not developed more than that of a child seven or eight years of age. His opinion was based upon seeing her daily since her marriage to his son. They lived with him about five months after his son married Deloris.

Tom Goodwin had known her all of her life, and according to his testimony she talked more like a child about ten or twelve years of age than a grown person.

A physician who qualified as an expert, and who had had twenty years' experience as a specialist in the treat-

ment of nervous and mental diseases, examined her and testified that she had the mind of a child seven, eight or nine years old. He gave her what is known as the Binet-Simon test to determine her mental age. He described the test minutely, and said that he was positive that her mind was only developed to about the eight and a half years old period.

Mrs. Ida Bell was a witness for the defendants on the question of the mental condition of the plaintiff. According to her testimony, Mr. Watts told her that the record did not show that Deloris lived in Ouachita County at the time the probate court made an order removing her disabilities as a minor in 1918. Watts wanted Deloris to sign a quitclaim deed to the land in order to make his title good. She told Deloris that this was for the purpose of correcting the title, and Deloris readily signed it. The mother of Deloris died in 1902, and Mrs. Bell immediately took her two children, and raised them as a part of her own family. Mrs. Bell had six children in all, and testified that Deloris had just as good a mind as any of them. She went through the ninth grade in school, and was just as smart as any of the children. She quit school because she wanted to marry.

O. C. Hays testified that he knew Deloris Bilyeu well and that he never saw anything wrong with her mind. She was just like the rest of the girls that he knew.

A daughter of Mrs. Bell also testified that there was nothing wrong with her mind, and that she had as good a mind as any of Mrs. Bell's children.

A young lady who had taught her said that she never knew or heard of anything being wrong with the mind of the plaintiff.

F. A. Laney, a school teacher, also testified that he never noticed anything wrong with the plaintiff mentally, and that she was a normal girl. He said that she was not very apt to learn at school, but that he did not consider there was anything wrong with her mind.

A physician who met the plaintiff when he was called to attend her mother-in-law, and who afterwards

attended her in childbirth, testified as to her mental condition. He said that, while he had never made an examination of her as to her mental condition, he had seen and talked with her a great many times, and did not observe any defect in her mind. He talked with her frequently, and she appeared absolutely normal to him.

The chancellor found the issues of fact in favor of the defendants, and it was decreed that the complaint of the plaintiff be dismissed for want of equity.

To reverse that decree, the plaintiff has duly prosecuted this appeal.

*Martin & Martin* and *J. W. Warren,* for appellant.

*J. T. Sifford, J. E. Gaughan, E. E. Godwin* and T. J. *Gaughan,* for appellee.

HART, J., (after stating the facts). On appeal chancery cases are tried *de novo,* and the findings of fact by the chancery court are allowed to stand unless they are clearly against the preponderance of the evidence. *Leach* v. *Smith,* 130 Ark. 465.

To invalidate a deed on the ground of the grantor's mental incapacity, the proof must show that the grantor was incapacitated from intelligently comprehending and acting upon the affair out of which the transaction grew, and that he did not intelligently understand and comprehend the nature and consequences of his act. In other words, the mental capacity at the time of signing a deed sufficient to comprehend the nature of the transaction is the standard fixed by the law for determining the mental competency of the person signing the deed. *Kelly's Heirs* v. *McGuire,* 15 Ark. 555; *Pulaski County* v. *Hill,* 97 Ark. 450; *McEvoy* v. *Tucker,* 115 Ark. 430; and *Reaves* v. *Davidson,* 129 Ark. 88.

Tested by the principles of law announced above, it can not be said that the chancellor erred in finding the facts to be against the plaintiff.

Mrs. Bell, the aunt of the plaintiff and her sister, took them when their mother died, and raised and educated them as a part of her own family. When her husband died Mrs. Bell formed the idea of selling her hus-

band's land together with the land which her nieces had inherited from their mother for the purpose of getting out of debt, and moving to another place. The land of the minors was of but little value. The timber had been cut off of it, and none of it was in cultivation. All the lands were sold for $7.50 per acre, but the evidence shows that the part of the lands which belonged to the estate of the husband of Mrs. Bell was much more valuable. The price paid for the lands was an adequate one, and the sale was void as to the plaintiff only because the order removing her disabilities as a minor did not state that she was a resident of the county in which the order was made. To correct this defect in the title, the quitclaim deed in question was executed. The land became more valuable on account of the discovery of oil in the vicinity, and the plaintiff seeks to set aside the quitclaim deed on the ground that she signed it on account of the love and confidence she had in Mrs. Bell, and on the further ground that she was not mentally competent to sign a deed. She states that she did not know that she was signing a deed.

On the other hand, Mrs. Bell and Watts testified that she knew she was signing a quitclaim deed for the purpose of curing a defect in the title of Watts. In other words, they explained to her that the probate order removing her disabilities as a minor was void because it did not state that she was a resident of the county in which it was made.

The chancellor made an express finding of fact in favor of the defendants on this phase of the case, and it can not be said that his finding is against the weight of the evidence so that it must be set aside on appeal.

The question which has given us the most concern is whether or not the plaintiff was mentally competent to execute the quitclaim deed in question. According to the testimony of a specialist in mental diseases, her mind had never developed beyond the mind of a child eight and a half or nine years old, and consequently she did not understand the nature of her act when she signed the quitclaim deed. His testimony is corroborated by

that of her father-in-law, and two other witnesses who knew her well. On the other hand a physician who attended her in childbirth, and who knew her very well, testified that while he did not make any mental examination of the plaintiff, he talked with her frequently, and she appeared absolutely normal to him. He said that he had seen her a great many times and talked with her, and did not see any defect in her mind. Mrs. Bell, who raised the plaintiff, and one of her children both testified that the plaintiff had a normal mind, and that her mental condition was as good as that of any other of the children. Several other witnesses who knew her well also testified that her mental condition appeared to be normal.

The undisputed evidence shows that in the first instance the land was sold for an adequate price. The sister of the plaintiff, who was of lawful age and signed the deed, refused to take any part in trying to set it aside. It is true that she was not examined as to the mental condition of the plaintiff; but it must be remembered that the burden of proof was upon the plaintiff to show that she was mentally incompetent to execute the deed. The fact that the sister refused to have anything to do with setting aside the deed is a circumstance tending to show that she did not believe that there was any undue influence used in procuring it, or that the plaintiff was mentally incompetent when she signed it. She testified in positive terms that she had conveyed to Watts her interest in the land, and had no sort of right to invalidate the deed. This tended to show that she believed the consideration was an adequate one, and that the original transaction was free of fraud.

The result of our views is that, in the application of the rules of law declared above to the facts of the case, it can not be said that the decree of the chancellor was wrong, and it will be affirmed.