SHARP *v.* OATES.

Opinion delivered January 28, 1929.

986

*Edward Gordon*, and *Colvin & Sellers*, for appellant.
*Strait & Strait*, for appellee.

HART, C. J., (after stating the facts). The record shows that the appellants are the collateral heirs of Lela Van Winkle, deceased, and are entitled to whatever estate she left. At the outset it may be stated that the right to cancel a deed obtained from the grantor by mistake,

fraud, duress or undue influence descends to the heirs, if it exists in the ancestor, unimpaired at the time of his death. *Reaves* v. *Davidson*, 129 Ark. 88, 195 S. W. 19; case-note to 2 A. L. R. at p. 431; and note to 33 A. L. R. at p. 53.

This brings us to a consideration of the merits of the case. To invalidate a deed on the ground of the grantor's mental incapacity, the evidence must show that the grantor did not have sufficient intelligence to comprehend and act upon the affair in question, and that he did not understand and comprehend the nature and consequences of his act. *Bilyeu* v. *Wood*, 169 Ark. 1181, 278 S. W. 48.

Counsel for appellants rely upon two grounds to avoid the deed of Lela Van Winkle at the time she executed it. One is that she was mentally incapacitated on account of the excessive amount of narcotics which had been given her in her treatment for tuberculosis. On this point the divorced husband of Lela Van Winkle testified that she was addicted to the use of drugs on account of having tuberculosis, and that this rendered her mentally incompetent to comprehend any business transaction of an extended character. We do not attach much importance to his testimony, for he is not shown to have been a man of any decided character himself. The parties did not live together long, and the record shows that Lela Van Winkle was a woman of as much or more intelligence than her divorced husband. Appellants also introduced the testimony of two experts, who examined the chart of the last illness of Lela Van Winkle, showing the amount of narcotics given her during the last few months of her life. Judging from the amount shown from the chart, they testified that she could not have been mentally competent to comprehend the nature of the transaction which she entered into with Dr. Oates on the Sunday morning in question, and that she was not mentally competent to execute the deed on the following morning. On the other hand, several physicians for appellee testified that the amount of narcotics given

her at that time was not excessive, and that she fully understood the nature of the transaction, and was mentally capable of executing the deed on the next morning after she had agreed upon the terms of the trade with Dr. Oates. Dr. Laws was one of these witnesses. He testified that Lela Van Winkle was a young woman of an unusually bright mind, and that she was only weakened physically by disease. She had contemplated selling the land in controversy for some time, and wished to do so in order to set her mind at rest concerning her future finances. She knew that she would have to remain in the sanatorium near El Paso, and her land was situated more than 1,000 miles away, in Conway County, Arkansas. She wished to sell it in order that she might invest the proceeds in such a way that she might invade the principal at any time she deemed it advisable for her physical and mental comfort.

Several business men of Conway County of acknowledged good repute testified that appellee gave an adequate consideration for the land. A careful consideration of the testimony leads us to the conclusion that $20,000 was a fair value for the land, instead of $36,000 as testified to by witnesses for appellants. These disinterested witnesses placed the value of the land at about $20,000, and gave their reasons for so doing.

Dr. Oates is not contended to have practiced any fraud on Lela Van Winkle, but it is contended that, by reason of his relationship to her, he unduly influenced her in the premises. There is nothing in the record tending to show that he said or did anything to cause her to sell the land against her will. While he had gone there for the purpose of purchasing the land for his wife, he did so after receiving a letter from the financial adviser of Lela Van Winkle, informing him that she wished to sell the land. There was no relation of trust or confidence between the parties, and no reason why Lela Van Winkle should have been unduly influenced by the mere presence of Dr. Oates.

As we have already seen, the land was sold for an adequate consideration, and Lela Van Winkle had evidently made up her mind in advance of seeing Dr. Oates that she wished to sell the land. It was not a jumped-up transaction, in which she acted hastily and without any advice upon the subject. She had contemplated selling the land for some time, and the sale was made to one of the parties to whom she had written concerning the purchase of the land. The burden was upon appellants to establish mental incapacity upon the part of the grantor, or that she was induced to execute the deed by undue influence. *Atwood* v. *Ballard,* 172 Ark. 176, 287 S. W. 1001.

It is well settled in the cases above cited, and in many others that might be cited, that, if a person has mental capacity to execute a deed, in the absence of fraud or undue influence, mental weakness, whether produced by old age or other physical infirmities, will not invalidate the deed. *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510; *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590; and *McDonald* v. *Smith,* 95 Ark. 523, 130 S. W. 515.

It cannot be said that the findings of fact by the chancellor are against the preponderance of the evidence, and therefore, under the settled rule of this court, the decree will be affirmed.