CULLING *v.* WEBB.

4-7630                                                    187 S. W. 2d 173

Opinion delivered April 30, 1945.

*Booker & Booker* and *Elmer Schoggen,* for appellant.

*Warner & Warner,* for appellee.

MILLWEE, J. James G. Webb and appellee, Nancy J. Webb were married at Fort Smith, Arkansas, June 10, 1902. At that time James G. Webb was the owner of his home located on lot 3, block 63 of the city of Fort Smith, where he continued to reside with Nancy J. Webb until his death on July 17, 1928. Appellant, Beulah W. Cullins is the daughter of James G. Webb by his first wife and has resided in Little Rock, Arkansas, for more than twenty-five years. Nancy J. Webb taught in the colored schools of Fort Smith from 1896 to 1919 with the exception of one year, and was teaching at the time of her

marriage. James G. Webb worked as a porter for the City National Bank for many years until shortly before his death in 1928.

On May 21, 1928, James G. Webb and his wife executed a deed conveying the home place to Frances Kemp, and on the same day she conveyed same back to James G. and Nancy J. Webb as tenants by the entirety. Both deeds were filed and recorded on May 22, 1928. Nancy J. Webb continued to reside on the property for about a month after her husband's death when she moved out of the state. She continued to rent and pay taxes on the property until she sold it to appellee, Viola E. Rigney in March, 1939, for $800.

On September 8, 1943, appellant brought this suit to set aside the deeds executed by the parties as hereinbefore mentioned on May 21, 1928, and the deed to appellee, Viola E. Rigney, executed in March, 1939. It was alleged that Nancy J. Webb induced her husband to transfer title to the property on May 21, 1928, in an attempt to defraud appellant of her inheritance, and that James G. Webb at the time was by reason of age, senility, and feeble-mindedness, lacking in his capacity to make a conveyance. It was also alleged that appellant had no knowledge of these transactions until shortly before she filed this suit.

Appellee, Viola Earls Rigney, filed her separate answer containing a general denial and alleging that she bought the property in good faith without knowledge of appellant's claim; that she had made valuable improvements on the property, and that appellant was informed of the execution of the deeds on or about the date thereof and acquiesced in the validity of said deeds for fifteen years.

A trial of the issues on October 18, 1944, resulted in a decree dismissing appellant's complaint. The court found (1) that James G. Webb was competent to execute the deeds of May 21, 1928, creating the estate by the entirety, and (2) that appellant had knowledge of the deeds before and immediately after the death of

James G. Webb and was barred from maintaining the suit. It is the contention of appellant that both findings are against the preponderance of the evidence.

Where chancery cases are tried *de novo* the findings of fact made by the court must be allowed to stand unless they are clearly against the preponderance of the evidence. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160.

The following rule is stated in 26 C. J., "Deeds," § 54, p. 264: "In determining the question whether a deed is void because of the mental incapacity of the grantor, his mental ability at the time of the execution and delivery controls; and if he possessed the requisite capacity at such time, his .deed will be valid. . . ." The burden was, therefore, upon appellant to establish mental incapacity upon the part of James G. Webb on May 21, 1928.

This court in an opinion by Mr. Justice HART in the case of *Sharp* v. *Oates,* 178 Ark. 983, 13 S. W. 2d 15, said: ". . . To invalidate a deed on the ground of the grantor's mental incapacity, the evidence must show that the grantor did not have sufficient intelligence to comprehend and act upon the affair in question, and that he did not understand and comprehend the nature and consequences of his act. *Bilyeu* v. *Wood,* 168 Ark. 1181, 278 S. W. 48. . . .

"It is well settled in the cases above cited and in many others that might be cited, that, if a person has mental capacity to execute a deed, in the absence of fraud or undue influence, mental weakness, whether produced by old age or other physical infirmities, will not invalidate the deed. *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510; *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590, and *McDonald* v. *Smith,* 95 Ark. 523, 130 S. W. 515."

Applying these well-established principles of law to the facts in this case, it cannot be said that the chancellor erred in finding against the appellant.

This case was tried more than fifteen years after the execution of the deeds which appellant seeks to set aside. It is not surprising, therefore, that the testimony

of most of the witnesses regarding the mental capacity of James G. Webb on May 21, 1928, is somewhat vague and indefinite. While there was testimony to indicate the incapacity of Webb several weeks after the execution of the deeds in question, a preponderance of the evidence tends to support the trial court's conclusion of his mental capacity at the time the deeds were actually executed.

Nancy J. Webb testified that her husband worked at the bank until noon on May 17, 1928, when he came home sick, but remained up and about; his mind was as clear as ever; and he knew exactly what he wanted to do. He told his wife that he wanted to repay her for what she had done for him as far as he could, and that he wanted her to have the home, if he should die first. On May 21, 1928, he went to the Lyman Real Estate office and had the deeds prepared without any suggestion from his wife, and then had her to go with him to the real estate office to execute the deeds. She had made loans to and paid debts for her husband in the sum of $960 out of her savings from her salary as school teacher. Notes and canceled checks for such loans were introduced in evidence. The last of these notes had been made by James G. Webb on March 6, 1928, to the bank where he was employed. She also paid his funeral expenses of $201.15. This testimony of Nancy J. Webb as to the mental capacity of her husband was corroborated by neighbors and associates of long standing, including the teller of the bank where James G. Webb was employed. There is no testimony in the record tending to show that Nancy J. Webb used any undue influence upon her husband to induce him to execute the conveyance.

Appellant testified that she visited her father in December, 1927; that he was nervous and irritable and could not concentrate; that he had lost interest in his reading and church affairs; and she thought he had quit work at the bank at that time. She also testified that her father visited her in Little Rock either in the spring or fall of 1928—she thought it was about three months before he died. He was not in Little Rock long before he

started to worry about his job and they had to watch him. He wandered off one night and her husband found him in jail. His mind seemed to be blank at that time. The municipal court record which was introduced in evidence showed that this incident occurred on June 22, 1928. She was called back to Fort Smith the first part of July and her father did not recognize her at times.

James G. Webb was 69 years of age at the time of his death. The certificate of death gave arterio-sclerosis, or hardening of the arteries, as the cause of death. Dr. E. A. Renard testified that this disease in an advanced stage tended to produce mental dullness, irritability and loss of expression, and would tend to render one incapable of conducting business affairs. He had not attended James G. Webb. Dr. Ish attended James G. Webb while he was visiting appellant in Little Rock in June, 1928, and recommended that he have his teeth extracted. He said the patient had certain "mental abnormalities" and discussed the matter of sending Webb to the hospital for the insane. He did not describe the mental abnormalities, and Webb was never placed in a hospital.

We will not attempt to detail the testimony of all the witnesses in the case. We have carefully read and considered all the evidence, and think it is reasonably clear that appellant did not make out a case sufficient to cancel the deed of her father. We are, therefore, of the opinion that the finding of the chancellor that James G. Webb was mentally competent on May 21, 1928, when he executed the deeds in question is supported by a preponderance of the evidence. As before stated, the burden of proof was upon appellant to establish the mental incompetence of her father, and, having failed to do so, the chancellor correctly dismissed her complaint.

The decree of the trial court is correct and, therefore, affirmed.