CHAPMAN *v.* DEER.

5-1414                                          308 S. W. 2d 818

Opinion delivered January 13, 1958.

*Gordon* and *Gordon,* for appellant.

*Brazil* and *Brazil* and *John G. Moore,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal comes from an unsuccessful attempt by the appellants to set aside a deed on the claim that the grantor lacked men-

tal capacity. The appellants (plaintiffs below) are heirs of the grantor: the appellees (defendants below) are heirs of the grantee.

On March 14, 1955 Ed Doyle executed the warranty deed here questioned, which conveyed a track of 80 acres to his niece, Margaret Deer. The recited consideration was $1.00 and love and affection. Mr. Doyle was then 87 years of age and suffering from cancer. Margaret Deer died intestate in the early part of 1956. In April 1956 Mrs. Twila Chapman was appointed guardian of her father, Ed Doyle; and filed this suit against Margaret Deer's heirs to set aside the deed. Mr. Doyle died intestate on August 1, 1956; and the plaintiffs' cause of action was revived by his heirs at law. The case was heard by the Chancery Court on depositions and evidence *ore tenus*; and resulted in a decree denying plaintiffs the prayed relief. In this Court the appellants state the issue as follows: "It is the sole contention of the appellants that Ed Doyle did not have sufficient mental capacity to execute a deed at the time the deed in question was executed, and that the Chancery Court erred in dismissing the complaint for want of equity".

A vast array of witnesses testified for each side. It was shown that in early March 1955 Ed Doyle was 87 years of age and suffering from arteriosclerosis; that his eyesight was somewhat impaired; that he did not recognize old friends; that he would wander in his conversations; that at times he thought someone was trying to do him bodily harm; that some of his friends and family considered him absolutely incompetent; and that others merely said that they would not want him attending to any business for them. In early March 1955, his physician, Dr. Gutowski, suspected that Mr. Doyle was suffering from cancer of the jawbone, and arranged to send him to Little Rock for examination. A few days before he left for Little Rock, Mr. Doyle executed the deed in question. In Little Rock the cancer diagnosis was confirmed. Mr. Doyle was in a rest home for a short time, returned to his home near Perryville, and died intestate on August 1, 1956.

The vital question is whether Mr. Doyle was mentally competent to execute the deed on March 14, 1955. The accepted test of competency in a case like this one was clearly stated by Justice Hart in *Bilyeu* v. *Wood*, 169 Ark. 1181, 278 S. W. 48:

> "To invalidate a deed on the ground of the grantor's mental incapacity, the proof must show that the grantor was incapacitated from intelligently comprehending and acting upon the affair out of which the transaction grew, and that he did not intelligently understand and comprehend the nature and consequences of his act. In other words, the mental capacity at the time of signing a deed sufficient to comprehend the nature of the transaction is the standard fixed by the law for determining the mental competency of the person signing the deed. *Kelly's Heirs* v. *McGuire*, 15 Ark. 555; *Pulaski County* v. *Hill*, 97 Ark. 450; *McEvoy* v. *Tucker*, 115 Ark. 430; and *Reaves* v. *Davidson*, 129 Ark. 88."

Again, in *McEvoy* v. *Tucker*, 115 Ark. 430, 171 S. W. 888, Justice Frank G. Smith quoted from Justice Riddick's language in *Seawel* v. *Dirst*, 70 Ark. 166, 66 S. W. 1058:

> " 'It follows, therefore, that the proof which is designed to invalidate a man's deed or contract on the ground of insanity must show inability to exercise a reasonable judgment in regard to the matter involved in the conveyance . . . To that effect (i. e. to invalidate the deed) the insanity must be such as to disqualify him from intelligently comprehending and acting upon the business affairs out of which the conveyance grew, and to prevent him from understanding the nature and consequences of his act.' "

Measured by the test of the quoted cases, and the evidence now to be mentioned, we cannot say that the Chancery decree is erroneous. Both of the doctors who testified for the plaintiffs (appellants) admitted that a person in Mr. Doyle's condition in March 1955 could have had intervals of competency. Dr. Gullett testified:

"He would have had periods of time when he would be more or less lucid . . . it is possible that he could have been lucid during a period in there". Dr. Gutowski testified: "At times he might know, and then at other times he might not know about it". Thus, even according to plaintiffs' doctors, it was possible for Ed Doyle to have executed a valid instrument on March 14, 1955.

It was shown that Mr. Doyle's sister and his niece, Margaret Deer, had lived with him and taken care of him since 1946; that he owned in excess of 220 acres; that on March 14, 1955 he went to Perryville and paid his taxes; that he went, alone, from the courthouse to the office of W. E. Jones, an abstracter; that Mr. Doyle selected from the other lands on his tax receipt the particular eighty acres that he decided to convey to his niece, Margaret Deer; and that he stated the consideration was love and affection. Mr. Jones was also a Notary Public, and a former County Clerk of Perry County. He testified he had known Mr. Doyle quite well since 1922 and had made loans for him; that on March 14, 1955, Mr. Doyle, alone and unaccompanied, entered Mr. Jones' office; that Mr. Doyle gave the instructions for the preparation of the deed and signed and acknowledged it before Mr. Jones; and that Mr. Doyle was entirely competent at that time.

Further, it was shown by the witness, S. V. Gullett, that in July 1955, after Mr. Doyle returned from Little Rock, where the cancer diagnosis had been confirmed, Mr. Doyle heard that some of his children might attack the validity of the deed he had made to Margaret Deer; and that Mr. Doyle made two visits at several weeks interval to the law firm of Brazil and Brazil to arrange for them to defend the title of Margaret Deer, should any of the Ed Doyle heirs subsequently attack the deed in court.

We have sketched the testimony in considerable detail because it possesses certain ingredients which clearly demonstrate that Mr. Doyle was competent to execute the deed on March 14, 1955; that he retained in his

mind the fact that he had executed the deed; and that he undertook to arrange to have its validity defended. The rules of law are well understood: the problem is the weighing of the evidence in the light of such rules. We hold that the Chancellor was correct in dismissing the complaint.

Affirmed.