STRICKLIN *v.* MITCHELL.

5-2482                                              350 S. W. 2d 319

Opinion delivered October 23, 1961.

*Joe Holmes,* for appellant.

*Max M. Smith,* for appellee.

Jim Johnson, Associate Justice. This case involves the setting aside of a deed because of mental incapacity of the grantor.

The property in question was conveyed on July 12, 1944, from Bev Graves to his then wife Ethel by warranty deed. The deed was filed for record August 26, 1944. Bev Graves died September 11, 1945. The widow occupied the land until her death on March 17, 1960. The plaintiffs, appellees here, are the children of the deceased Bev Graves by a former marriage; they on July 7, 1960, filed their complaint in equity to set aside the deed from Bev Graves to his wife alleging grounds of lack of mental capacity to execute the deed; and further, that the grantor was an insane person at the time the deed was executed and was never at any time thereafter capable of ratifying the deed. The defendants, appellants here, are the collateral heirs and descendants of Ethel Graves, deceased. From a decree of the trial court setting aside the deed, appellants prosecute this appeal.

For reversal appellants rely upon three points. The points will be discussed in the order raised.

First, appellants contend that appellees have failed to show that Bev Graves did not have sufficient mental capacity to execute the deed on the day that it was executed. To support their contention, appellants cite *Cullins* v. *Webb,* 208 Ark. 631, 187 S. W. 2d 173, which states in part as follows:

"This case was tried more than fifteen years after the execution of the deeds which appellant seeks to set aside. It is not surprising, therefore, that the testimony

of most of the witnesses regarding the mental capacity of James G. Webb on May 21, 1928, is somewhat vague and indefinite. While there was testimony to indicate the incapacity of Webb several weeks after the execution of the deeds in question, a preponderance of the evidence tends to support the trial court's conclusion of his mental capacity at the time the deeds were actually executed.''

In the instant case the testimony is specific and definite regarding Bev Graves' mental capacity at the time of execution of the deed. The witnesses testified that they saw him at frequent intervals up to the time of his death except when he was in the State Hospital.

The testimony is undisputed that Bev Graves started losing his mind soon after his son and his daughter-in-law burned to death in 1939. His condition grew progressively worse until his wife Ethel would have to look after him like he was a small child. He would wander off and get lost, wander around at night necessitating his wife's locking him in his room; she would fix his plate for him and feed him as if he were a child. He didn't know his own children, poured coal oil in his corn cob pipe, attempted to feed the mule stove wood, couldn't resist taking hold of his daughter's hair which he called ''stuff'' and spent considerable time trying to pin house flies to the wall with his fingers. Mr. Graves was confined to the State Hospital in 1945 where he remained until his death on September 11th.

The proof is clear that Mr. Graves was completely disoriented in 1942, 1943, and 1944, and according to the evidence of Dr. Barbara Barksdale, Senile Psychosis, Confused Type, such as existed in this case, would have rendered Mr. Graves incapacitated in 1944, the year the deed is shown to have been executed.

Q. ˇ The Court: ''You say this is not a disease that has lucid intervals?''

A. Dr. Barksdale: ''No, sir, it is a gradual thing that gets worse as time goes on.''

In *Cullins* v. *Webb, supra,* this Court further said:

"Where Chancery cases are tried *de novo,* findings of fact made by the Court must be allowed to stand unless they are clearly against the preponderance of the evidence."

From the undisputed evidence set out above, we cannot say that the learned Chancellor's findings are against the preponderance of the evidence.

Appellants' second point contends that the action should have been barred by laches since the suit was brought sixteen years after the execution of the deed. In *Sanders* v. *Flenniken,* 180 Ark. 303, 21 S. W. 2d 847, this Court held that mere lapse of time before bringing suit, without change of circumstances or in the relation of the parties will not constitute laches. Not only must there have been unnecessary delay, but it must appear that, by reason of delay, some change has occurred in the condition or relation of the parties to the property which would make it inequitable to enforce the claim.

In the case at bar the only thing that could have brought about a change of relationship of all the parties was the death of Ethel Graves. Ethel Graves died March 17, 1960; this action was brought on July 7, 1960, therefore it is apparent that as soon as it was known that the heirs of Ethel Graves would claim the property, the heirs of Bev Graves filed their suit. There is no showing in the record that injury or prejudice to the appellants occurred as a result of the delay complained of. See *Cullins* v. *Webb,* 207 Ark. 407, 180 S. W. 2d 835.

Appellants' last point contends that the hospital records introduced were inadmissible and that no witness was given to properly prove or lay any foundation for the introduction of the records. The rule is well established that in Chancery appeals we eliminate incompetent evidence that was duly objected to in the trial court, and we decide the case here on the remaining competent evidence. *Umberger* v. *Westmoreland,* 218 Ark. 632, 238 S. W. 2d 495. Applying this rule to the case at bar, on

trial *de novo*, we find that there is an abundance of competent evidence, as indicated under point 1 above, to support the Chancellor's findings without considering the hospital records.

Affirmed.