MEIGS *v.* MORRIS.

Opinion delivered October 17, 1896.

PAROL GIFT—ENFORCEMENT.—A suit to cancel a deed of land by the heirs of a donee by parol gift will not lie against the donor's grantee, unless the proof would have been sufficient to warrant a decree for specific performance against the donor.

SPECIFIC PERFORMANCE—SUFFICIENCY OF EVIDENCE.—In order that a court of equity may exercise its power to decree specific execution of a contract to convey land when there has been a part performance thereof, the proof of such contract must be clear and unambiguous, and must be either admitted or proved with a reasonable degree of certainty.

SAME—PART PERFORMANCE.—Where a father agreed orally to give certain land to his daughter at some future time, on condition that she and her husband reside thereon, the agreement will not be specifically enforced, although she was given possession of the land, and made improvements thereon, if the improvements were not made in pursuance of such agreement.

Appeal from Benton Circuit Court in Chancery.

·EDWARD S. McDANIEL, Judge.

STATEMENT BY THE COURT.

This action was brought by R. S. Morris, to recover from appellants, T. M. Meigs, *et al.*, the possession of a tract of land containing five acres. Morris purchased the land from one Morgan, to whom it had been sold and conveyed by John W. Boling. The land was formerly owned by Boling, under whom both appellee and appellant's claim title. The appellant, T. M. Meigs,

married a daughter of Boling, and the other appellants are children of this marriage.

In the year 1876 Boling gave Meigs and his wife possession of this land, upon which there was a small house. The appellants claim that Boling, as an inducement to have his daughter, the wife of Meigs, live near him, agreed to give her this tract of land if she and Meigs would reside upon it. Appellants allege that the gift was accepted, and that, by reason of said promise of Boling, Meigs and his wife took possession of the land, made valuable improvements upon it, purchased other land adjoining said tract, made it their home, and lived upon it for many years. Mrs. Meigs died in 1889, but her husband and children continued to remain in possession until the commencement of this action.

Boling never conveyed the land to Meigs, or his wife, but, after having mortgaged it, he conveyed it in 1892, by quit claim deed, to Morgan, who sold to Morris. The appellees filed their answer and cross-complaint, setting forth above facts, and denying that Boling had any right to convey the land. They allege that they were in the actual possession of the land, claiming the ownership thereof, and that both Morgan and Morris had notice of such claim at the time of the conveyances to them. Prayer of their cross-complaint was that such conveyances be set aside and cancelled, and for other relief.

Deposition of Boling was read on part of appellants. He testified in part as follows: "I gave Martha, my daughter, and T. M. Meigs possession of the house which stands on the five acres in controversy, and told her she she could have it as a home. Ques. Did you not say to your daughter and her husband that if they would buy the adjoining claim you would give your daughter the tract in controversy? Ans. I told them I would let them have it. Ques. Did your daughter and

her family go into possession, and remain in possession up to the time of her death, and after her death defendant Meigs and family continue in possession, with your full knowledge and consent? Ans. Yes, sir; of course. Ques. Have you at any time since they went into possession ever set up claim to the lands in controversy to them, or to any one else? Ans. In this way; I never made any deed, and held it as my property. I reckon you might call it that way. Ques. At the time you told your daughter that she could have it, was it your intention at that time to make her a deed to the land? Ans. Well, if she had lived. I expect I would if she had lived. It was my intention at the time I first gave her possession. Ques. Was her death the reason you had for not making the deed? Ans. Well, it might have been in part, but I never was called upon, and it just remained so." On cross examination he said: "Sometime before her death—could not tell how long— I promised Martha to deed her this land. At that time she was living on a corner of the five acres. I mortgaged the land twice before my daughter's death, once to Horner, and once to Morris. Ques. At the time you mortgaged the land did you consider yourself the absolute owner of it? Ans. Well, you might call it any way you choose. The title was in me, but they were in possession. If I hadn't considered myself the proper owner, I wouldn't have mortgaged it. * * * * * * The day I sold to Lewis he asked me what I reserved the five acres for, and I spoke, and told him this, that Meigs' wife was a poor sickly thing, and that it was for her benefit; also if I took a notion and wanted to move back from town, I could build and live close to her in my old age. Ques. Was it your intention, at the time you put Mrs. Meigs and her husband in possession of the land, that they should hold possession of the same under you, and by your consent, until you got ready to deed

the land to her, and did Mrs. Meigs and her husband so understand from the time you gave them possession? Ans. I guess they understood it that way, and that was my intention. Ques. At the time you placed Mrs. Meigs and her husband in possession of the land, was it not more for the purpose of having her close to you and her mother, on account of her delicate health, than for any other purpose or consideration? Ans. Her health was good at that time; while, of course, a person's children are dear to them, and Meigs was destitute of any home, and of course, I let him go on it for a benefit to him—to have shelter. Ques. Did your daughter or her husband ever call upon you to give her a deed to this land? Ans. Not that I have any recollection of."

Depositions of other witnesses were read, not necessary to set out. On the hearing the chancellor found that there was no equity in the cross-complaint, dismissed the same, and gave judgment in favor of Morris for the possession of the land.

*J. A. Rice*, for appellants.

1. What is a gift? The act by which one voluntarily and without a consideration transfers his property to another. Bouvier, Law Dict. title *Donatio;* 8 Am. & Eng. Enc. Law, p. 1309.

2. As to the amount of probative force necessary to establish a gift,—it may be proved like any other fact in dispute. A reasonable certainty is all that is required. 1 Lead. Cases Eq.; 9 Wall, pp. 1 to 12.

3. Will a parol gift be upheld? It will, in a proper case. 32 Ark. 97–116; 42 *id.* 247; 43 N. Y. 34; 9 Wall. 1–12, Law Ed. Book 19, p. 590.

4. The statute of frauds cannot be pleaded by a stranger to the transaction. 105 Ind. 17; 4 N. E. 281; 103 Ind. 105; 8 Am. & Eng. Enc. Law, p. 659.

5. Only in such cases where the acts, conduct and declarations of the parties to the alleged gift, at and subsequent to the time of the gift, are ambiguous, equivocal, uncertain, and doubtful, will such acts, conduct, declarations, etc., be admitted to impeach the gift. 14 Ark. 304; 8 Am. & Eng. Enc. Law, p. 1336.

6. Aside from the gift, the title has vested in Meigs' children by limitation. 39 Ark. 158; 38 *id*. 181; 34 *id*. 547; *ib*. 534; *ib*. 598.

7. When the evidence is sifted and purged of that which is incompetent and incredible, the decree ought to be reversed. 43 Ark. 318.

*E. P. Watson*, for appellee.

1. Appellants seek a remedy which amounts to a specific performance, by divesting Morris of his title. Specific performance is largely in the discretion of the court, and it will be refused when the circumstances render it inequitable or improper. 19 Ark. 23; 6 Johns. Ch. 111; Pom. Eq. Jur. par. 1404–5 and note.

2. A parol gift from a parent requires a greater amount and different kind of evidence to sustain it than where it is for valuable consideration. 67 Am. Dec. 425; *ib*. 432.

2. Appellee pleads the statute of frauds, and there is no such proof of valuable improvements as to take the case out of the statute. The statute can be pleaded by any one who is defendant to the suit.

3. A change of circumstances surrounding the parties at the time of the contract will prevent specific performance. And when the rights of others have intervened, so that specific performance would be injurious to their legal or equitable interest, it will be denied. 25 Pa. St. 405; 9 Crauch, 456–494.

4. Diligence is requisite, and while one sleeps on his rights, the rights of third parties intervene, and

estoppel arises. 22 Am. & Eng. Enc. Law, pp. 1043, 1049 . and notes; 8 Pet. (U. S.) 420.

5. Laches have bound appellants. 95 U. S. 494; 9 Pet. 420; 58 Am. Dec. 139, and note; 54 *id*. 126 and note, p. 132; 14 Pet. 172; 22 Am. & Eng. Enc. Law, 1043, and notes.

RIDDICK, J., (after stating the facts.) The appel- Enforcement of parol gift. lants, the husband and children of Mrs. Meigs, allege that her father, Boling, agreed to convey this land to her upon condition that she and her husband would reside upon it. They contend that she complied with the terms of the contract, and that, having since died, the lands now in equity belong to her heirs. Although they did not make Boling a party, nor expressly ask for a specific performance of such contract, they seek to accomplish the same end by having the conveyance by Boling to Morgan cancelled, and the land declared to be the property of appellants. To justify a decree in favor of appellants, the proof should be sufficient to have warranted a decree of specific performance against Boling, had he retained the title, and the suit been brought against him. This is true, even if we concede that both Morgan and Morris had notice of the claim of appellants at the time they purchased; for, if the proof is not sufficient to have justified a decree against Boling, it would not warrant a decree against those to whom, for a valuable consideration, he sold and conveyed the land.

In order that a court of equity shall exercise its Sufficiency of evidence. power to decree a specific execution of a contract to convey land when there has been a part performance thereof, such contract must be clear and unambiguous, and must either be admitted or proved with a reasonable degree of certainty. When the possession of land is not in pursuance of a contract to convey, or if such possession and

the improvements made by the party holding it can reasonably be accounted for in some other way than by such a contract between the parties, then such possession and improvements will not ordinarily avail as a part performance. Pomeroy, Specific Performance, secs. 116 and 136. For this reason it has been held that "the possession by a son of land belonging to his father, even when accompanied by valuable improvements, will not be treated as a part performance, because the relation between the parties prevents the inference of a contract of sale which would otherwise arise from the facts, and removes all necessity of accounting for the possession by the supposition of a contract to convey. Pomeroy, Specific Performance, sec. 116; *Poorman* v. *Kilgore*, 26 Pa. St. 365; 67 Am. Dec. 425; *Cox* v. *Cox*, 26 Pa. St. 375; 67 Am. Dec. 432; *Ham* v. *Goodrich*, 33 N. H. 32.

Part performance.

In the case of *Poorman* v. *Kilgore, supra*, the Supreme Court of Pennsylvania said that: "It is so natural for parents to help their children by giving them the use of a farm or house, and then to call it theirs, that no gift or sale of the property can be inferred from such circumstances. It is so entirely usual to call certain books, or utensils, or rooms, or houses, by the name of the children who use them, that it is no evidence at all of their title as against their parents, but only a mode of distinguishing the rights which the parents have allotted to the children as against each other, and in subjection to their own paramount right. The very nature of the relation, therefore, requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. It must be direct, positive, express, and unambiguous. The terms must be clearly defined, and all the acts necessary for its validity must have especial reference to it and nothing else."

The rules of law announced in the above quoted decision are based on sound reasons, for it is a matter of common observation that parents often permit their children to take possession of property, and allow them to claim and use it as their own, but with no intention on the part of such parents of parting with the title, or of conferring upon their children the power to compel them to convey the same.

It is unnecessary to discuss the evidence in this case. The chancellor found that the possession of the land in controversy and the improvements made thereon were not made in pursuance of a contract to convey. We have read the evidence carefully, and, while there is some conflict, we cannot say that the finding of the chancellor is clearly against the weight of the evidence; on the contrary, we are of the opinion that his finding is in accordance with the weight of evidence. The testimony of Boling, whose deposition was taken and read by appellants, seems to support the finding of the chancellor. It tends to show that he had given his daughter possession of this land to be used as a home, and that he at one time intended to give and convey it to her, and had so informed her, but he afterwards became poor, and was compelled to mortgage and then sell the land. A promise to give at some future time cannot be enforced, and the proof, in our opinion, does not show that Boling did more than this. Appellants, therefore, did not make out their case.

The judgment is affirmed.