## CHISM *v.* THOMAS.

### Opinion delivered May 10, 1920.

TENANCY IN COMMON—FIDUCIARY RELATION.—Where a tenant in common was acting for himself and his cotenants in the conduct of a partition suit leading to a decree for a sale and division, a relation of trust existed, which prevented him from acquiring rights in the land antagonistic to his cotenants.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT OF FACTS.

This litigation arose out of prior litigation in which one Robert Tucker was declared to be a trustee for the benefit of himself and the other heirs of his mother and certain land held by him in trust was ordered sold for the purpose of partition. Commissioners who were appointed to partition the land reported that it was not to the best interest of the parties concerned that the land be partitioned in kind, and the court approved that report and ordered the sale, and appointed a commissioner to make the sale. There were nine beneficiaries of the trust so declared, and appellant's wife was one of them, and, by purchase, appellant had acquired two others' shares, which, with the one owned by his wife, gave him control of three shares, or a one-third interest. Appellant employed the attorney to file the original suit, and was active in its prosecution.

The land was advertised to be sold on October 31, 1918, and was sold on that day for a sum which netted the owner of each one-ninth interest the sum of $619.33. On the day before the sale appellee executed to appellant a deed to her one-ninth interest for a consideration of $250, paid in cash at the time, and after the sale by the commissioner she applied to, and received from the commissioner the sum of $619.33. Thereafter appellant brought this suit in the circuit court to recover the sum so received from the commissioner, and upon appellee's motion the cause was transferred to equity.

Appellee tendered into court the sum of $250 which had been paid her at the time she executed the deed, and she alleged in her answer that the execution of the deed had been procured by fraud, it having been represented to her by appellant that he wanted her to sign an instrument authorizing the court to sell the land, and that it was necessary, before the land could be sold, for her to sign the paper.

Appellant is appellee's brother-in-law, and both are negroes, and while both were ignorant of court procedure, appellee appears to have been even more so than appellant. Appellee testified that on the day before the sale appellant came to her and said, "I have got a paper here that you will have to sign before you can get any money," and as appellant had been looking after the litigation in which they were jointly interested, she executed and acknowledged the deed, and that when she discovered the effect of her action she told appellant she had been deceived, and he replied that "the law don't allow nothing for ignorance."

Appellant denied that he had practiced any deception, or had made any misrepresentation, but stated that appellee told him she had grown tired of the litigation and would be glad to take $250 for her interest and get out of it.

The notary public who took the acknowledgment testified that appellant was not present when the acknowl-

edgment was taken, and that the notary read the deed over to appellee, who stated that she knew what it was and that she voluntarily signed it. Appellee's signature was by mark.

Appellee admitted that the notary public read the deed over to her, but she supposed that it was the "sales paper," which appellant said would have to be executed for the court to sell the land, and that she was told by appellant (and believed it to be true) that she would get $250 then and would be paid more later when the land was sold.

Christina King, a sister of appellee, testified that appellee told her she was going to sell her interest in the land, and that the statement was made after the suit had been decided in their favor; but this witness went with appellee to the notary public and signed and acknowledged the deed at the same time, yet she said that "I signed, but I didn't sign to sell; I signed it to let them know I was willing for it to be sold, and get as much for it as I could. I had an understanding that I would sign this deed and I was to get whatever it brought with (appellant) Chism." And, notwithstanding the fact that Christina King signed and acknowledged the deed, she was not paid any sum by appellant, but received her full share from the commissioner.

It is appellee's theory that Christina King was a party to the fraud; but whether this is true or not, it is apparent that her conduct furnishes strong corroboration of appellee's statement. If, as she stated, she signed the deed in order that the land might be sold, then she, too, had been deceived, although no advantage was taken, or attempted to be taken, of her; and if she was not herself deceived, then it is reasonable to say that she was a party to the fraud.

The court rendered a decree in favor of appellee for the $619.33, less the $250 paid her when the deed was executed, and as that sum had been deposited with the clerk

of the court as a tender, appellant's complaint was dismissed. Other facts will be stated in the opinion.

*Bratton & Bratton,* for appellant; *Gardner K. Oliphint,* on the brief.

1. The case was properly triable at law and it was error to transfer it to equity. Defendant in a court of law could have availed herself of every defense. She assents, and plaintiff was entitled to a jury to pass upon his case.

2. The evidence shows positively that plaintiff perpetrated no fraud upon defendant. There was litigation over the estate of the deceased mother for a long time, ending with defendant being awarded, along with other heirs, an interest in the lands, the amount of such interest being incapable of ascertainment in dollars and cents before a sale was made by the commissioner. Defendant was well aware that she had been decreed an interest—that a sale would be made at some future time, and not until then could she realize any cash money. She wanted the money and was tired of the whole matter—her children were sick and she needed money badly. She sought the plaintiff to buy her interest; he at no time sought her. He finally agreed to pay her $250 for her interest. She appeared in the absence of plaintiff before a notary, when the deed was read and explained to her and she signed and acknowledged the deed for $250. The facts show that defendant not only intended to retain the $250 paid her, but that she intended to retain $619.33 wrongfully obtained from the clerk and if plaintiff had not instituted suit to recover the sum wrongfully obtained by her. She was perfectly willing and was going to sit peaceably and enjoy the fruits of her own fraud. The evidence does not support the decree, as plaintiff perpetrated no fraud upon defendant. 9 Ark. 482; 22 *Id.* 184-6. The decree should be reversed upon the evidence.

*Carmichael & Brooks,* for appellee.

The record shows a bold case of fraud on part of appellant. The confidential relation of cotenants had not terminated at the time the appellant made the purchase and appellee was misled. This court can easily see, as the court below found, that the whole thing was a trick or scheme to beat appellee out of her interest. The decree of the chancellor is not against the preponderance of the evidence and should not be disturbed. This case is very similar to 58 Ark. 542; 49 *Id.* 242. The law forbids a trustee or *quasi* fiduciary from taking personal advantage touching the subject of such fiduciary position. Chism was a tenant in common by descent, as well as Chism's wife, and the fiduciary relation did not change until there was a sale and the money divided, and the case should be affirmed.

SMITH, J. (after stating the facts). Appellant was the purchaser at the commissioner's sale, and, although he testified that the land was worth only fifty to sixty dollars per acre, he admitted that he was prepared to pay $150 per acre for the land, a sum largely in excess of the price he was required to pay; but even at the price which he did pay a single interest was worth $619.33; and yet, on the day before the sale, he paid appellee only $250 for her interest.

The court below did not cancel appellee's deed, as it was unnecessary to do so to administer full and complete relief; but the testimony would have warranted that action had it been necessary. Appellant and his wife were tenants in common with appellee, and appellant had been acting for himself and his cotenants in the conduct of the suit leading to the decree under which the sale was had, and a relation of trust and confidence thus arose, the law of which relationship is stated in *Dunavant* v. *Fields,* 68 Ark. 542, as follows: "In *Clements* v. *Cates,* 49 Ark. 242, this court said: 'The law forbids a trustee, and all other persons occupying a fiduciary or *quasi* fiduciary position from taking any personal advantage touching the

thing or subject as to which such fiduciary position exists;' or, as expressed by another, 'wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights in the subject antagonistic to the person with whose interest he has become associated. * * * This rule applies to tenants in common by descent with the same force and reason as it does to persons standing in a direct fiduciary relation to others.' There is no perceptible difference, in this regard, between the case of tenants in common by descent and that of tenants in common by devise.''

The decree is correct, and is therefore affirmed.