Woods *v.* Spann.

4-3877

Opinion delivered May 27, 1935.

*Bridges, McGaughy & Bridges,* for appellants.

*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellees.

MEHAFFY, J. The appellees brought this suit in the Jefferson Chancery Court and alleged that on December 5, 1925, the Commercial Building & Loan Association of North Little Rock made a loan in the sum of $4,000 to the appellants, R. P. Woods and Nannie M. Woods, his wife, who executed their note for said sum. The payment of said note was secured by deed of trust, conveying certain real property in the town of Altheimer, upon which appellants' home is situated. The note was assigned and transferred by the holder to the State Bank Commissioner, in charge of the Bank at Altheimer, and by the Deputy Bank Commissioner in charge of said bank was transferred to C. E. Spann, trustee. There was due on said note the sum of $921.79. This indebtedness was not denied by the appellant. A decree was entered for the amount of this note, and the balance due was paid in court, and the deed of trust satisfied as to this indebtedness. Appellees further alleged that on January 13, 1927, the appellants, being indebted to the bank of Altheimer in the sum of $6,300, executed and delivered to E. B. Stokes, trustee, their deed of trust conveying the above-mentioned land. The deed of trust further provided that it should secure, in addition to the indebtedness described, any and all other amounts that either of the appellants might owe the Bank of Altheimer between the date of the instrument and December 31, 1930. The original indebtedness was paid, but the deed of trust secures the payment of a collateral note executed by appellant, R. P. Woods, to the Bank of Altheimer on March 17, 1930, bearing interest at the rate of 10 per cent. per annum; that on December 17, 1933, said note was sold, assigned and transferred to C. E. Spann, trustee. It was further alleged that as additional security for said note R. P. Woods pledged to the Bank of Altheimer 20 shares of the stock of the Planters' Gin Company of Altheimer, certificate No. 4; it was further alleged that the balance due on the note was $1,133.53 for which appellees asked judgment, and prayed that the judgment be declared a

lien on the 20 shares of stock and on the real property above mentioned, and that the same be foreclosed.

Appellants answered and denied that the deed of trust secured the note for $1,000, and specifically denied that R. P. Woods pledged the Bank of Altheimer the 20 shares of Planters' Gin Company stock, or that any note executed by said appellant provided that said stock be pledged. It was further alleged that all provisions in said note pertaining to the stock were fraudulently inserted and written into the note after the signing thereof and without the consent of the appellants, and that such alteration of the note rendered it void and of no effect.

The collateral note mentioned was a blank form, and at the close of the sentence, after the words, "the following property, abstractly described thus, *viz:* "Planters' Gin stock certificate No. 4 for twenty shares of stock." Just below this statement was, "C. E. Spann as trustee for Mrs. Spann and the Bank of Altheimer is holding stock certificate."

Following the last quotation, said note contained two paragraphs of printed matter which are usually contained in collateral note forms. The appellee, C. E. Spann, testified positively that the statement "Planters' Gin stock certificate No. 4, for twenty shares of stock" was in the note when it was executed and signed by Woods. R. P. Woods testified just as positively that it was not in the note at the time he signed it.

The other quotation was a mere memorandum showing that C. E. Spann held the stock as trustee. The real controversy in the case is as to the first quotation, altering the note by inserting the gin company stock. Evidence and circumstances were introduced that corroborated the statements of Spann and Woods, but it is unnecessary to set out this evidence.

The court entered a decree on the first note for $987.13, the note executed to the Commercial Building & Loan Association, and the appellants paid this note in open court, and the lien as to said indebtedness was satisfied. The court further found that there was due the Bank of Altheimer $1,000 as evidenced by a note executed by R. P. Woods March 17, 1930; that the amount due on

said note was $1,203.79; that it was executed by Woods to the Bank of Altheimer and duly assigned to the appellees, but the court found further that the certificate No. 4 for twenty shares of stock of the Planters' Gin Company was not pledged by the appellants to the Bank of Altheimer, and said certificate was ordered returned to Woods.

R. P. Woods and Nannie M. Woods excepted to the finding and judgment of the court rendering judgment against said R. P. Woods on account of said last-mentioned note. The court dismissed the cross-complaint of the appellants, and appellants prosecute this appeal to reverse the judgment of the court in finding against Woods, and the appellees prosecute a cross-appeal as to the finding of the court that the Planters' Gin stock was not pledged to secure the debt.

As to whether the gin stock was pledged was a question of fact and on this question the evidence was in conflict, and the chancellor's finding is not against the preponderance of the evidence.

"A chancellor's finding of fact will not be disturbed on appeal unless clearly against the preponderance of the evidence." *Cox* v. *Wasson,* 187 Ark. 452, 60 S. W. (2d) 566; *Crill* v. *Trites,* 186 Ark. 354, 53 S. W. (2d) 577; *Gregory* v. *Consolidated Utilities, Inc.,* 186 Ark. 406, 53 S. W. (2d) 854; *U. S. Ozone Co.* v. *Morrilton Ice Co.,* 186 Ark. 485, 54 S. W. (2d) 282; *Sch. Dist. No. 28* v. *E. H. Stafford Trust,* 186 Ark. 1027, 57 S. W. (2d) 561; *Clark-McWilliams Coal Co.* v. *Ward,* 185 Ark. 237, 47 S. W. (2d) 18.

The chancellor, in his decree, did not state on what ground he based his conclusion that the alteration in the note did not render it void. He might have concluded that the change was not made by any person interested, or any person authorized by the interested parties, and was a mere spoliation.

An alteration, to have the effect of avoiding an instrument, must not only be material, but must be made by a party or privy to the instrument, or with his knowledge or consent. 2 C. J. 1231; 1 R. C. L. 983 *et seq.*

When made by the parties, however, the alteration, if material, makes void the instrument.

Section 7891 of Crawford & Moses' Digest is as follows:

"MATERIAL ALTERATION. Any a l t e r a t i o n which changes:

"(1) The date;

"(2) The sum payable, either for principal or interest;

"(3) The time or place of payment;

"(4) The number or relation of the parties;

"(5) The medium or currency in which payment is to be made;

"Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

The majority are of opinion that the alteration by adding "Planters' Gin stock certificate No. 4, for twenty shares of stock" is not material. With this holding Mr. Justice SMITH and the writer do not agree. It is true, under § 7891, *supra,* that the instrument would not be void unless under the last paragraph: "Or any other change or addition which alters the effect of the instrument in any respect is a material alteration."

There is considerable conflict in authority as to what is or is not a material alteration in an instrument. The weight of authority seems to be that a material alteration of a mortgage which avoids the mortgage does not avoid the note or evidence of the debt for the payment of which the mortgage is given to secure. *Zeigler* v. *Vollers,* 157 Pac. 1035.

The Texas Court of Appeals, holding that any change in the terms of the written contract which varies its original legal effect and operation, whether in respect to the obligation it imports or to its force as a matter of evidence, when made by a party to the contract, is an alteration thereof, and that the effect of such alteration was to nullify and destroy the instrument as a legal obligation. But the court said: "But it is not every change that will amount to an alteration that will avoid the in-

strument. If the legal effect of the instrument be not changed, the instrument is not altered." In the Texas case the instrument had been changed by adding: "Order on John W. Wooten left as collateral security." These words were written in the note after the same had been executed and without the knowledge or consent of the maker. The court said: "The addition of said words to the note did not change its legal effect, and was not therefore a material alteration, and did not affect its validity." *First Nat. Bank, etc.* v. *Pritchard*, 2 Tex. Ct. of Appeals, Civil Cases, § 130; *Yost* v. *Waterman Steam-Engine Co.*, 24 S. W. 657.

The change in the note involved here was the same change that was made in the note in the Texas case, and it did not change the legal effect of the note. In fact it amounted to a memorandum indicating that the note as written was secured by the pledge of the gin company stock.

A material change is one which causes the instrument to speak a different language in legal effect from that which it originally spoke. It is the effect upon the instrument, and not the particular manner in which it is done, which is material, and therefore an alteration, to be material, must not only be an actual alteration, but must be in a material part of the instrument, and must affect the rights and liabilities of the parties. 2 C. J. 1173.

The alteration in the instant case did not affect the liability of the parties. The maker still owed the note, there was no change in the date, amount of interest, amount of the note, the time or place of payment, the number and relation of the parties, nor the medium in which the payment was to be made.

"In accordance with the rule stated in the preceding paragraph, that to avoid an instrument there must have been an intent to alter it, there would seem to be no question but that where there is no intent to change the effect of the instrument, but merely to make a memorandum upon it, or to evidence another and a separate contract upon the same paper, there is, as a matter of fact, no alteration at all, and such addition will not avoid the effect of the instrument." 1 R. C. L. 998.

The memorandum written on the note in the instant case did not change the effect of the note, but it was merely evidence of another contract, a separate contract from the note, pledging the stock for the payment of the note.

"The writing, after execution of a note, by the holder, the mother of the maker, underneath the note in the blank space below the signature of the maker of the words, 'To be cancelled at my death,' and followed by the signature of the holder, constitutes a mere memorandum, and not a material alteration of the note." *Fischer* v. *Haxtum*, 210 Ill. Appeals 506.

"The second defense is not well founded: (a) Because the act of pledge, even though on the same paper as the note and incorporated in the body thereof, is no part of the note, or negotiable instrument itself, *Farmers' & Merchants' Bank* v. *Davies*, 80 So. 713; 144 La. 532; and (b) even if it were, it is admitted the erasure (after the sale) 'was due to an erroneous belief on the part of the bank that it had the right to apply all the securities attached to the note sued upon to the payment of other indebtedness of O'Neal (the owner of said stock)'." *Alexandria Bank & Trust Co.* v. *Honeycutt*, 108 So. 475.

In the above case at the time the note was indorsed, it was secured by a pledge of certain shares of stock. Honeycutt defended on the ground that the plaintiff sold certain stock without notifying him, and applied the proceeds to other indebtedness of O'Neal, and the plaintiffs, having erased from the list of pledged stocks on the back of the note certain shares, it was contended that he thereby altered the negotiable instrument.

If erasing stock that was actually pledged to secure the payment of a note is not a material alteration, the indorsement on the note that certain stock was pledged to secure the payment would not be a material alteration. The writing in the stock would no more change the obligation than erasing the writing pledging the stock. The obligation of the maker would be the same in either event. The change did not add to the obligation nor increase the maker's liability in any way.

1092

Since the conclusion reached is that the change was not material, it follows that the decree of the chancery court on appeal and cross-appeal must be affirmed.

It is so ordered.