Hyde, Ex'rs *v.* Hyde

5-3827                                               400 S. W. 2d 288

Opinion delivered March 14, 1966

*John Harris Jones,* for appellant.

*Edward M. Owens,* for appellee.

Paul Ward, Justice. This is an appeal from an order of the Probate Court construing two paragraphs in the will of Oscar H. Hyde who died May 3, 1964. There is little if any dispute about the material facts involved.

Mr. Hyde and his wife Mildred were living in their home on Claud Road near Pine Bluff when he died, leaving children by a former wife. Two of these children, Edgar Lee Hyde and Elsie H. Hunt, were named Executors in his will. They were also made trustees of a trust fund created by the testator.

The will contains two paragraphs which are the subject of this litigation. They are copied below.

1. "I give to my wife, Mildred Hyde, the right to occupy and enjoy as her home the residence in

which we are living at the time of death, for so long as she shall live and care to do so.''

4. ''Until her remarriage or death my wife, Mildred Hyde, shall be paid from the said trust the sum of $100.00 per month and such additional sums as shall be required for her care and treatment in event of her sickness or injury. . . .''

On March 5, 1965 the Executors (appellants herein) filed a petition in the Jefferson County Probate Court for instructions, requesting the court to construe the two portions of the will above copied. In essence it was alleged: At the time of the testator's death he and Mrs. Hyde occupied the residence above mentioned. Since September or October 1964 she has not, according to their information, occupied said property as her residence; a hearing should be held to determine whether she has in fact abandoned the property, and, if so, whether the property should be rented or sold.

At the hearing held on May 20, 1965, testimony was introduced tending strongly to show that Mrs. Hyde had not been living in her own home for several weeks but that she had been living in the home of a certain (unmarried) man. In fact the court found the evidence indicated she had been having a rather close association with the man in question. However, no witness testified positively to any other improper relationship between the two. Mrs. Hyde denied there was any improper relationship, but stated she cooked, washed, ironed and cleaned house for the man; that she received $10 per week, which she was using to pay for a refrigerator used in her own home on Claud Road, and that she always stayed in her home at night. The man for whom she worked corroborated her testimony.

*One.* The trial court found that Mrs. Hyde had not abandoned her home, and we agree. In the case of *Woodson* v. *Lee,* 221 Ark. 517, 254 S. W. 2d 326 we

approved the definition of the word "abandonment" to mean:

> "To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; . . ."

The above language was used in connection with the abandonment of a child, but we think it also applies to the situation here. However unconventional Mrs. Hyde's conduct may appear to have been, we cannot say it shows an intent on her part to abandon her home. We point out also that the record shows Mrs. Hyde was officially adjudged mentally incompetent January 6, 1961 and admitted to the hospital, and that her competency has not been restored.

*Two.* It is our opinion the trial court was also correct in holding that appellants shall continue to pay Mrs. Hyde the sum of $100 each month. It suffices, in this connection, to point out that she has not remarried and is still alive. Mr. Hyde was aware of Mrs. Hyde's incompetency and it is reasonable to assume he meant to make provisions for her welfare.

Affirmed.