CITY OF LITTLE ROCK et al *v.* SUNRAY DX OIL COMPANY

5-4238                                                425 S. W. 2d 722

Opinion delivered April 1, 1968

*Perry V. Whitmore, A. F. House, Lester & Shults,* and *Rose, Meek, House, Barron, Nash & Williamson,* for appellant.

*Darrell Dover* and *House, Holmes & Jewell,* for appellee.

G. David Walker, Special Justice. The issue in this case is the correct zoning classification of property situated at the Northeast Corner of the intersection of

Kavanaugh and Oak Streets in Little Rock ,which was formerly the homestead of two prominent Little Rock citizens, the late Mr. & Mrs. J. F. Loughborough. Appellants contend that the property is properly classified as "D", Apartment, and appellee contends that the proper designation is "F", Commercial.

At the outset it should be pointed out that this is not a rezoning case. All parties acknowledge that the original zoning of the property in question has not been legally changed. The question for determination is how the property was originally zoned.

The difficulty arises out of the manner in which the various classifications were depicted upon the "District Map" which was adopted in the original Zoning Ordinance of the City of Little Rock in 1937. The respective classifications were established only by being shown on this map in different colors, which were apparently placed on the map with an ordinary crayon. It would appear that the best judgment was not used in choosing the contrasting colors because, to some eyes at least, there appears to be a minimum of difference between the shadings of the different classifications. The passage of time has rendered this difference more difficult to distinguish.

On June 19, 1937, the original Zoning Ordinance of the City of Little Rock was published in the Arkansas Gazette together with a reproduction of the District Map. Since the colors could not be reproduced in the newspaper print, the zoning classifications were shown by cross hatching or different slantings of lines on the published map. On this published map the zoning of the property in question was shown as "D", Apartment District.

In 1950 the City of Little Rock adopted Ordinance 8489 which recited:

"Whereas, the original Zoning Map of the City of Little Rock has become worn and unusable, and

"Whereas, the City has purchased three copies of the Bagley map of the City of Little Rock upon which the zoning of all property has been designated, which zoning has been verified by the Planning Commission,

* * * "The three copies of the Bagley map now owned by the City of Little Rock and upon which has been transcribed the present zoning of all property and land within the City of Little Rock are hereby approved and adopted as the official Zoning Map of the City."

The Bagley map so adopted consists of two books in which various tracts or portions of the City are shown as separate sheets which can be removed or redrawn as zoning changes take place. The Bagley map showed the property in question as "F", Commercial District.

In 1964 this property was placed upon the market and the appellee, Sunray DX Oil Company, became interested in purchasing it as a filling station site. It inquired of Mr. Henry M. DeNoble, Director of the Department of Community Development of the City of Little Rock, which is the department in charge of zoning matters, as to the correct classification of the property and on August 24, 1964, Mr. DeNoble wrote a letter to appellee advising that the property was zoned "F", Commercial District. After receipt of this letter appellee immediately consummated purchase of the property.

Shortly thereafter appellee applied for a building permit to commence construction of the proposed filling station. This application was denied on the sole ground that the property was zoned "D", Apartment District, and use for filling station was prohibited. It is stipulated that the application for building permit was

otherwise proper and the permit should have been issued if the property was classified "F", Commercial District, being a proper use under that classification.

It appears that after his letter of August 24, 1964, Mr. DeNoble made some investigation of the matter and decided that the Bagley map was incorrect and thereupon undertook to revise the map to set forth his determination. This was done after appellee's purchase and apparently without any knowledge of or notice to appellee. In oral argument it was admitted that Mr. DeNoble had authority to make such changes only in the event of action by the zoning authority and that his attempted revision of the map was unauthorized.

When the building permit was refused, appellee instituted the present suit praying a mandatory injunction directing the City and its agents to issue the building permit and restraining the City and its agents from interfering with appellee's use for the property for the construction and maintenance of a filling station. Numerous property owners with residences in the vicinity of the property intervened in opposition to appellee's petition. The Chancellor ruled in favor of appellee and issued the injunction as prayed. This appeal followed.

The Bagley map was never filed with the recorder of Pulaski County nor was there ever any notice or hearing of any change in the original classification of the property. These matters are immaterial, however, because appellee does not contend that the Ordinance of 1950 adopting the Bagley map was a change in the original zoning of the property. It is appellee's contention that the property was always zoned "F", Commercial and that the Bagley map and the Ordinance adopting it are merely a verification of that fact.

It is fundamental that the Chancellor's findings will not be set aside on appeal unless against the preponderance of the evidence, and it is incumbent upon ap-

pellants to establish that the findings of the lower Court were erroneous. *High* v. *Bailey,* 203 Ark. 461, 157 S. W. 2d 203; *Woods* v. *Spann,* 190 Ark. 1085, 82 S. W. 2d 850 and cases there cited. We are not convinced that the Chancellor's findings were erroneous.

Appellants first argue that an inspection of the original District Map will reveal that the color designation of the Loughborough property corresponds with that of "D", Apartment District. It may be observed that acuity of color vision is not one of the constitutional or statutory qualifications for a Supreme Court Justice. However, even among those members of the Court who profess accurate color perception there is a difference of opinion as to the interpretation of the faded colors of the original District Map. It might well be argued that in such a case we should not substitute our color vision for that of the Chancellor.

Moreover, even if the colors presently are apparently those designated for "D", Apartment, it does not follow that they were always such. A witness, Arthur Mills, a real estate man who was an Alderman in the City of Little Rock at the time of the passage of the Ordinance adopting the Bagley map as the official zoning map and who had served on the Planning Commission, testified that at the time the Bagley maps were adopted in 1950 he was familiar with the property in question and knew that it was designated "F", Commercial, both on the original District Map and on the Bagley map. He had a business interest in the vicinity which impressed the matter on him. He was not contradicted or impeached.

The Bagley map, adopted by an Ordinance which recites that the zoning therein reflected had been verified by the Planning Commission, is most persuasive that this was the classification set forth in the original Ordinance. In the view which we take of this case, it is not necessary to pass upon the argument advanced by

appellee on this point to the effect that the findings so made are conclusive upon the Court but, to say the least, such findings are presumptively correct and highly persuasive on the Court. See 37 Am. Jur., *Municipal Corporations*, Section 177, p. 812. The Ordinance of 1950 contained a finding that the original Ordinance, then thirteen years old, "has become worn and unusable" and further that the Bagley map "zoning has been verified by the Planning Commission". It would not seem that the original map has become any more reliable in the seventeen years which have passed since it was found to be worn and unusable. Fortunately the Bagley map was prepared in such manner that the classification would not fade.

Appellants argue the map published in the Arkansas Gazette at the time of the adoption of the original Ordinance as evidence that the original map showed this to be "D", Apartment property. In the first place the published map was not the original map but a copy of it and there is no showing by whom or by what authority the copy was made. Obviously there was an error either in this published copy or in the Bagley map. Three copies of the Bagley map were prepared and verified. It should be noted that the Loughborough property involved in this suit is a corner tract and was the only part of the block which was alleged to have been zoned as "F", Commercial, the rest of the block being unquestionably "D", Apartment. It would appear logical that it would be more likely that an error would be made in the preparation of the published map by failing to note the small tract which was classified "F" than in the three Bagley maps, which would have required a conscious addition of a small tract to a block otherwise entirely in the "D" class. To have made such a change on the Bagley maps required a deliberate act, whereas in the preparation of. the published map it would have been quite easy to have overlooked the small tract differently classified, particularly in view of the slight differentiation in coloring; hence, we believe it more likely

534

that the Bagley map was the correct interpretation of the original map.

These views make it unnecessary to consider other points argued in able briefs of counsel.

The Decree of the Court below is correct and is affirmed.

HARRIS, C. J. and JONES, J., dissent.

GEORGE ROSE SMITH, WARD and FOGLEMAN, JJ., not participating.

Special Justices LOUIS RAMSAY and J. S. BROOKS join in this opinion.