Isaiah Bennie HENDRIX et ux v. Sam HENDRIX et al

73-234                                              506 S.W. 2d 848

Opinion delivered March 25, 1974

*F. C. Crow*, for appellants.

*Graves & Graves*, for appellees.

JOHN A. FOGLEMAN, Justice. This is an appeal from a chancery court decree ordering eighty acres of land in Clark County sold and the proceeds allocated among the owners according to their respective interests. We will not set aside the findings of the chancellor unless they are against the preponderance of the evidence, and it is incumbent upon appellants to establish that the findings of the trial court were erroneous. *City of Little Rock* v. *Sunray DX Oil Company*, 244 Ark. 528, 425 S.W. 2d 722; *Holt* v. *Holt*, 253 Ark. 456, 486 S.W. 2d 688. We have considered all of appellants' allegations and find that they have failed to meet the burden of showing error.

All of the parties to this action are the direct descendants, or spouses of descendants, of James Hendrix who died intestate in 1944 seized of the land in question. Appellant Isaiah Bennie (or I. B.) Hendrix is a grandson of James Hendrix. Katie Hendrix is I. B.'s wife and Pauline Buford is his niece. Appellees are allegedly all the remaining heirs (and their spouses) or spouses of deceased heirs who claim an interest in the property.

In 1962, appellant I. B. Hendrix was informed that the family property had been sold in a tax sale in 1949. After talking with appellee Sam Hendrix, the oldest son of James Hendrix and the person who, the family assumed, was responsible for the property, I. B. went to the courthouse and ascertained that the property was shown on the tax books as belonging to Bill McMillan. Sam and I.B. Hendrix consulted several attorneys about the possibility of recovering the property. I. B. Hendrix then obtained the signatures of other heirs on a sheet of paper which was captioned, "we the undersigned agree for I. B. Hendrix to redeem the Hendrix land at Bertrell, Arkansas." Deeds of conveyance made out to I. B. Hendrix were then sent by I. B. to these heirs. Eight of them signed the deeds, but the remainder, including Sam Hendrix, refused to sign.

I. B. Hendrix then filed suit to set aside the 1949 tax sale to J. E. Shaw and the subsequent deed from Shaw and his

wife to the McMillan defendants and to quiet title in himself, naming as additional defendants all the Hendrix heirs who had not deeded their interests to him. Sam Hendrix and his wife filed an answer, and at trial his brother Crawford was allowed to answer orally for himself and for his wife and four nieces. No other Hendrix defendant filed an answer. The Shaw and McMillan defendants filed answers.

The case was heard before the Chancery Court of Clark County on June 25, 1968, and, on August 1, the chancellor issued a decree which set aside the tax sale, ordered the subsequent deed from the Shaws to the McMillans removed as a cloud on the title of the Hendrix heirs, declared the McMillan defendants to be entitled to $531.51 for taxes they had paid and ruled I. B. Hendrix was entitled to no affirmative relief against the other heirs. The decree specifically reserved to the other heirs the right to seek a partition of the property.

In September of 1971, suit was filed against I. B. Hendrix, his wife Katie and Pauline Buford, who had deeded her interest to I.B., by the remaining heirs, including seven of those who had previously deeded their interest to I.B.

Pauline Buford filed an answer in which she disclaimed any interest in the property due to her deed to I. B. Hendrix. I. B. and Katie Hendrix filed an answer in which the following material allegations were made: the seven plaintiffs who had deeded their interests to I. B. were estopped to maintain this action; those of the heirs who had signed the "agreement" were estopped and barred by laches; all those parties who did not file an answer in the first suit had defaulted and abandoned their interest in the property; if partition should be ordered, defendants were entitled to reimbursement for expenditures incurred incident to the property.

The case was tried on November 6, 1972, and on April 12, 1973, the chancellor issued a decree ordering a partition sale, finding I. B. Hendrix to be the owner of 19/144 of the land by virtue of inheritance and the eight deeds to him, setting out the proportionate interests of the other heirs and ordering payment of $531.51 to Al Graves, who had been the attorney for the Hendrix defendants in the quiet title action,

to reimburse him for advancing the funds paid to the McMillan defendants pursuant to the judgment in that case.

Appellants assert a number of grounds for reversal. They allege first that the decision of the chancellor was against the law and the evidence and that the court erred in holding that plaintiffs had not abandoned their interest in the land. The two bases for these contentions are the failure of certain of the heirs to answer in the first suit and the existence of the "agreement," signed by other heirs, for I. B. Hendrix to redeem the property. This court has applied the following definition of abandonment to determine if realty has been abandoned:

> To relinquish or give.up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to foresake entirely; to renounce utterly; to relinquish all connection with or concern in; . . .

*Hyde, Ex'rs* v. *Hyde,* 240 Ark. 465, 400 S.W. 2d 288. Title to realty may not be divested by abandonment alone. There must be an intent on the part of the owner to relinquish his claim, and this intent must be accompanied by circumstances of estoppel and limitation if the abandonment is not by a legal deed of conveyance. *Helms* v. *Vaughn,* 250 Ark. 828, 467 S.W. 2d 399.

The uncontroverted testimony established that all the heirs considered Sam Hendrix as the one responsible for the family property. Even appellants in their brief refer to Sam as the "self-styled administrator." Sam testified at the trial of the partition suit that, prior to the hearing in the action to quiet title, he contacted the other heirs and all wished him to represent their interests in the matter. We have long held that between tenants-in-common there is a fiduciary relationship, for they stand by operation of law in a confidential relation to each other, as to the joint property, and the duty is imposed on them to protect and secure their common interest. *Chism* v. *Thomas,* 144 Ark. 45, 221 S.W. 458; *Clements* v. *Cates,* 49 Ark. 242, 4 S.W. 776. Thus, by agreement of the other heirs and the duty imposed on him by virtue of his cotenant relationship, Sam Hendrix was representing his own interest and the interest of the heirs who failed to answer in the trial of

the quiet title action. There was no evidence, other than the failure of these heirs to answer in that action, to indicate that they intended thereby to abandon the property.

At the trial in the partition suit, I. B. Hendrix testified he was told by one of the attorneys he consulted that since the property had been lost for so long a time, one who redeemed it would be the owner, and the attorney suggested to him that he obtain the signatures of all the other heirs acquiescing in this arrangement. I. B. went on to say the heirs understood that if he were able to recover the property it would belong to him individually. This was contradicted by the testimony of Sam Hendrix, who said he agreed only to I. B. redeeming the land for the benefit of all the heirs, and said he would not have otherwise acquiesced since he had promised his mother and father he would see that everyone got his share of the property. We should point out that after the heirs had signed the "agreement," only eight were willing to deed their interest to I. B. From this, the inference that these nondeeding heirs did not understand the "agreement" as operating to divest them of their interest in the property was certainly a permissible one.

It is very widely held that one asserting abandonment of property, especially real property, bears the burden of proving it by clear, unequivocal and decisive evidence. *Shew* v. *Coon Bay Loafers, Inc.,* 76 Wash. 2d 40, 455 P. 2d 359 (1969); *Cameron* v. *Lebow,* 366 S.W. 2d 164 (Ky. 1963); *McLellan* v. *McFadden,* 114 Me. 242, 95 A. 1025 (1915); *Hoff* v. *Girdler Corporation,* 104 Col. 56, 88 P. 2d 100 (1939); *Friedman* v. *United States,* 347 F. 2d 697 (8th Cir. 1965), cert. denied, 382 U.S. 946, 86 S. Ct. 407, 15 L. Ed. 2d 354 (1965); *McCartney* v. *McKendrick,* 226 Miss. 562, 85 So. 2d 164 (1956); 1 Am. Jur. 2d 31, Abandoned, Lost, etc. Property, § 38. We cannot say the chancellor's finding, on the evidence presented, that an abandonment had not occurred was clearly against the preponderance of the evidence.

Appellants also contend the court erred in failing to find that appellees had made a gift of the land to appellants and in not granting judgment to appellants for all sums expended to recover, improve and maintain the land. Appellants argue that there was a valid parol gift of the property or, in the alternative, that the "agreement" signed by the heirs was a

sufficient memorandum to establish a written conveyance of the property.

The "agreement" does not provide adequate evidentiary support for appellants' contention that a written gift of the land had been made to appellants. Even if the description of the property in the "agreement" were found to be adequate, and we do not indicate that it was, we cannot say that the language of the document shows the donative intent of the signers clearly and convincingly, which would be necessary to establish a gift. *Mohr* v. *Hampton*, 238 Ark. 393, 382 S.W. 2d 6; *Baugh* v. *Howze*, 211 Ark. 222, 199 S.W. 2d 940.

Appellants also contend that there was a parol gift of the land to I. B. Hendrix. A parol gift of land must be shown by clear, unequivocal and convincing evidence especially when the transaction involves members of the same family. *Chambers* v. *Chambers*, 220 Ark. 51, 246 S.W. 2d 124; *Akins* v. *Heiden*, 177 Ark. 392, 7 S.W. 2d 15, *Meigs* v. *Morris*, 63 Ark. 100, 37 S.W. 302. The evidence supporting appellant's contention that a gift was made consisted principally of I. B. Hendrix's testimony that all the heirs agreed he could have the property if he were able to recover it, the "agreement" signed by the various heirs and the fact that appellants had expended money to improve the property. However, this testimony was directly contradicted by Sam Hendrix who said he would never have agreed to such an arrangement. The document relied upon is ambiguous and, as noted earlier, it is significant that only eight of the heirs later signed the deeds which I. B. sent to them granting their interest in the property to him.

Furthermore, an oral gift of land is not enforceable unless there is actual possession, followed by making of valuable improvements. *Brown* v. *Bennett*, 226 Ark. 872, 294 S.W. 2d 492; *Akins* v. *Heiden*, supra. The expenditures made by the donee in reliance upon the gift supply consideration, and the possession and betterment constitute such part performance as to take the case out of the statute of frauds. *Hunt* v. *Boyce*, 176 Ark. 303, 3 S.W. 2d 342; *Akins* v. *Heiden*, supra. The fact that the improvements were made in reliance upon the gift must be directly and unequivocally proved; mere proof that the donee received possession of the land, and has made improvements upon it, will raise no presumption of his purpose.

*Young* v. *Crawford*, 82 Ark. 33, 100 S.W. 87. If the improvements made by the party can reasonably be accounted for in some other way than by a contract between the parties, then such possession and improvements will ordinarily not avail as a part performance. *Meigs* v. *Morris*, supra.

On cross-examination, I. B. Hendrix testified he did not think he owned the land prior to the quiet title suit, and that as a result of correspondence with his attorney following that suit he believed he had been awarded the land. The improvements to the property, consisting primarily of the digging of a stock pond and fencing the land, were made after the decree in the first suit. Thus, it is just as reasonable to attribute the improvements to I. B.'s mistaken belief that he had acquired title through the suit to quiet title as it is to attribute them to his belief that a gift had been made to him.

In his memorandum opinion denying reimbursement to I. B. Hendrix, the chancellor found that the improvements were made by Hendrix for his own benefit after he concluded he owned the land, that he derived benefits from the improvements and that there was no evidence showing that the improvements increased the value of the property by any particular amount.

From the testimony of I. B. Hendrix himself and the lack of any other evidence in the record to support the claim for reimbursement, we cannot say the chancellor erred in ruling that no gift had been made to I. B. and that he was not entitled to reimbursement for the expenses attributable to the improvement to the property. It should be noted that the memorandum opinion did provide that I. B. Hendrix would receive reimbursement for county and school taxes paid by him on the property from 1968—1972 and for certain other expenses resulting from the quiet title litigation.

Appellants further contend the chancellor erred in refusing to apply the doctrines of estoppel, due to unclean hands, and laches. Estoppel can arise by actions of a party, or his failure to speak or act, but it does not exist unless the adverse party has in good faith relied upon the acts, inaction or silence. *Bowlin* v. *Keifer*, 246 Ark. 693, 440 S.W. 2d 232. Laches is unnecessary delay coupled with some unusual

change that occurs in the conditions dealt with and the relationship of the parties. *Sanders* v. *Flenniken,* 180 Ark. 303, 21 S.W. 2d 847; *Williams* v. *Grayson,* 224 Ark. 207, 273 S.W. 2d 844. In order to apply laches it must not only be shown that there was an unreasonable delay, but that by reason of this delay some change has occurred which makes it inequitable to enforce the claim. *Stricklin* v. *Mitchell,* 234 Ark. 31, 350 S.W. 2d 319. In view of the conflicting testimony noted previously, I. B. Hendrix's admission that he believed he gained ownership of the property pursuant to the judgment in the quiet title action and the fact that the improvements to the property were made after the date of the decree in the first suit appellants have failed to prove reliance on any action or inaction of appellees or to show that any expenditures to improve the property were incurred by reason of the delay of appellees in bringing this action. Furthermore, courts should apply laches, where one member of a family would be deprived of property because he failed to promptly bring suit against another, with extreme leniency. See *Chambers* v. *Chambers,* 220 Ark. 51, 246 S.W. 2d 124; *Boehnke* v. *Roenfanz,* 246 Iowa 240, 67 N.W. 2d 585, 54 A.L.R. 2d 1 (1954); *Berniker* v. *Berniker,* 30 Cal. 2d 439, 182 P. 2d 557 (1947); *Horton* v. *Horton,* 63 App. D.C. 375, 72 F. 2d 831 (1934). We cannot say the chancellor erred in refusing to apply estoppel or laches.

The assertion that the trial court erred in not holding that appellees had perpetrated fraud on appellants cannot be considered since appellants failed to raise it at the trial level. *Parsley* v. *Baker,* 254 Ark. 283, 492 S.W. 2d 891; *Travelers Insurance Co.* v. *McCluskey,* 252 Ark. 1045, 483 S.W. 2d 179.

Since we cannot say that the chancellor's findings are against the preponderance of the evidence, we affirm the decree.

BYRD, J., concurs.